## Epps v. Dickerson *et al.*

1. Burden of proof: QUANTUM AND WEIGHT OF EVIDENCE TO OVERTURN LEGAL TITLE. Where a party seeks to overturn the legal title to real estate, he should establish his case by evidence that is clear and satisfactory.

2. —— It would seem that, in the absence of corroborating circumstances, a court would not be justified in overturning a legal title upon the testimony of a single witness, if he were positively contradicted by the testimony of another, though the latter were a party to the suit.

3. —— Where in such case a witness undertakes to detail alleged conversations, the very completeness and perfect fitting of his testimony to the case which it seeks to aid, may, under certain circumstances, furnish just grounds of suspicion as to its truthfulness.

*Appeal from Cass District Court.*

FRIDAY, DECEMBER 7.

THIS is an action in equity, brought April 26, 1870, by Lewis Epps against Isaac Dickerson, John Keyes, and F. H. Whitney and others, as purchasers from them with notice, to set aside a deed for the north-east of the south-west quarter, and the west half of the south-east quarter of section five, and the south-east of the north-west quarter of section six, all in township seventy-six of range thirty-six, west of the fifth principal meridian, made by Lewis Epps to John Keyes, April 18, 1868; and to quiet the title in plaintiff to all not sold to *bona fide* purchasers, and to recover the proceeds of such portions as had been sold to such purchasers. The plaintiff claims the relief asked, on the ground that the defendant Dickerson was agent for the sale of said land, and made the sale thereof to John Keyes contrary to his instructions as such agent; and also, that such sale was made in fact to Keyes, Whit-

ney and Dickerson, and the conveyance taken to Keyes alone, but in trust for himself and the others, and for the purpose of deceiving and defrauding the plaintiff. These matters are alleged by proper averments and at great length. It is also alleged that certain parties, who are made defendants, were purchasers of a part of said property with notice and without any consideration paid; and also, that other parts of said property had been sold to purchasers who had paid therefor in good faith — these are not made parties, but the principal defendants are asked to be required to account for the purchase-money received therefor. The defendants in their several answers deny the averments and claims of plaintiff in detail. The cause was tried by the first method on the 12th day of October, 1871, and the district court adjudged that the plaintiff's petition be dismissed, and that the defendants recover their costs. From this judgment the plaintiff appeals.

*Brown & Griswold, P. Henry Smythe* and *Gillmore & Anderson* for the appellant.

*Temple & Phelps, Withrow & Wright* and *Barcroft & Gatch* for the appellees.

COLE, J. — This case is voluminous. The abstract of the record and evidence covers 289 large printed pages; the appellant's argument and reply contain 163 such pages, and a considerable of it in very fine or small type; and the appellees' argument contains ninety such pages in much the same type. The cause was submitted at such time as enabled the members of this court to carefully read, examine and consider the pleadings, evidence and arguments at our several homes and separately. At our first meeting after such reading, etc., we found that each member of the court had reached the same conclusion and

upon substantially the same line of thought and reasoning. Of course it is impracticable to set out in an opinion .the material evidence entire, or even to state its harmonies or conflicts; and much more to reason as to its weight and probabilities, or to follow counsel in their extended criticisms of it. To do either, would be of no practical use in this case, nor would it be of advantage to any other. We can and need only state the leading and ultimate facts as we find them.

Prior to April 14, 1868, the plaintiff, Lewis Epps, was the owner of the land in controversy in Cass county and other lands in the same county. He resided in Lee county. The defendant Dickerson, who resided in Lewis, in Cass county, was the plaintiff's agent for paying the taxes on his lands in that and an adjoining county; and early in March, 1868, he was made, by parol, the agent for the sale of plaintiff's lands. The selling price fixed upon the land in controversy was $8 cash per acre. The Chicago, Rock Island & Pacific R. R. was then about being located through the county of Cass. There had been at least two routes surveyed; one, running by the way of Lewis, and the other, some seven or eight miles north of it, and in the neighborhood of the land in controversy.

The instructions to Dickerson as agent were to watch the progress and probabilities of the location of the railroad, and if possible to ascertain in advance of the public the route selected, and make the sale while others were ignorant of it, but during the excitement attending the location. He had received and forwarded to the plaintiff two or more propositions by different persons for the purchase of the land; one, being at a less price, and another, the price but only half of it in cash, before he forwarded the proposition made by Keyes, which was at the price fixed, $8 per acre, cash, and was accepted. This last proposition was made on the 14th day of April, 1868, and was on that day forwarded to plaintiff, together with a deed in

blank to be executed by him. He received the letter and deed on the 18th day of April, executed the deed the same day and returned it to Dickerson, with a letter expressing his satisfaction with the sale. At this date the railroad had not been located, and Dickerson so advised the plaintiff in his letters. He also expressed the opinion, which was not unreasonable to any one, in view of the real facts, and very natural and probable to one whose manifest desires and interests were in accord with it, that it would be located by the way of Lewis. We find neither fraud, misrepresentation, concealment or bad faith on the part of Dickerson, so far as respects his knowledge or belief as to the location of the railroad, or the time, terms or manner of sale of the land. It is not true, then, as alleged by plaintiff, that Dickerson, as his agent, made the sale of the land contrary to his instructions.

II. Did Keyes buy the land in partnership with and take the title in his own name and in trust for himself, Dickerson and Whitney? Upon this branch of the case we are alike agreed in holding that the plaintiff has not made such a case by his testimony as will justify us in adjudging that Keyes did not buy for himself alone. The evidence does show that about two months after the sale to Keyes both Whitney and Dickerson did become owners each of one undivided third part of the land in controversy, together with a large amount of other contiguous and neighboring lands; that after the sale to Keyes and sometime about or after the middle of May, 1868, the railroad was located on the route north of Lewis and through the lands in controversy. That sometime in September following, a railroad station was fixed and the town of Atlantic was laid out on this land; and that before the commencement of this suit, it had become a very respectable village in its then present and highly promising in its future.

But while every circumstance relied upon to show that

Dickerson was interested in the purchase of the land, at the time it was conveyed to Keyes, may be entirely consistent with the assumption that he was so interested, they are, nevertheless, none of them, at all inconsistent with the fact that he was not so interested. These circumstances aside, the only support the plaintiff's case has is the direct testimony of one witness. We are free to confess, that in view of this whole record and evidence, his testimony does not command our credence. In the first place it only details alleged conversations, and its very completeness and perfect fitting to the plaintiff's case is itself a just ground of suspicion under all the circumstances. Then he is directly contradicted by the testimony of every person of whom he speaks. Further than this, it is made to appear, beyond controversy, that one of plaintiff's attorneys went secretly from Iowa to California, armed with funds and a copy of the commission and interrogatories to groom the witness just prior to and during the taking of his deposition, and that he did it. And besides this, there is evidence tending to show that the witness had cause of quarrel and was at enmity with two of the principal defendants.

And, even if the witness was entitled to credit, as an ordinary disinterested witness, against whom nothing was shown, we could not grant to the plaintiff relief upon his testimony alone; because he is directly and positively contradicted by the testimony of each one of the three principal defendants. If the three are to be counted only as one, yet we would not be justified in overturning a legal title upon the testimony of a single witness, when he was positively contradicted by the testimony of another, even though he be a party.

We conclude this opinion, already too long, by the single statement that we entertain no doubt whatever of the correctness of the judgment of the district court, and order that it stand                Affirmed.