JOHN P. BURKE, Appellant, v. C. D. DILLIN, C. M. WITT et al.

92 557<br>110 74<br>f110 420<br><br>92 557<br>f138 515

**Contract: Consideration.** For his own good, the holder of a second mortgage agreed with the holder of the third to keep the interest on the first mortgage paid, if the holder of the third mortgage would, for a fixed time, forbear a foreclosure to which he was then entitled. The second mortgage holder, instead, took an assignment of interest coupons attached to said first mortgage. Before the maturity of the coupons the second mortgage was foreclosed and the holder of the third was a party. The first was also foreclosed and redeemed by the holder of the third without knowledge that the holder of the second was asserting said coupons against him. *Held,* the agreement was on sufficient consideration. The foreclosure, before maturity of the coupons, does not estop the holder of the third mortgage from resisting the collection of said coupons.

*Appeal from Pottawattamie District Court.*—HON. N. W. MACY, Judge.

FRIDAY, DECEMBER 14, 1894.

ACTION in equity to foreclose a mortgage.   Decree for defendants.   Plaintiff appeals.—*Affirmed.*

*Flickinger Brothers* for appellant.

*Shea & Galvin* for appellees.

KINNE, J.—I.   The facts in this case, as disclosed by the record are as follows:   December 1, 1885, H. O. Rice owned the land in controversy, and also the north-west quarter of section 28, in township 76, range 41, in Pottawattamie county, Iowa.   On that date he executed a mortgage to J. W. Squires, trustee, for five thousand dollars, upon the whole of his land,—four hundred and eighty acres in all.   To the mortgage or bond there were attached ten interest coupons, each calling for the payment of one hundred and seventy-five dollars, and due, respectively, on the first days of June and December of each year.   Afterward, Rice became indebted to one Clapp, and executed a mortgage to him upon three hundred and twenty acres of said tract, not including the quarter in section 28.   This mortgage was for two thousand, six hundred dollars. Subsequently Rice executed a mortgage to defendant Dillin for one thousand, one hundred and forty-three dollars on the same land covered by the Clapp mortgage.   Still later, Rice executed a mortgage to the defendant Witt for five hundred and forty-three dollars on the land included in the Clapp mortgage.   December 15, 1888, the claims of Dillin and Witt were past due, and they were proposing to foreclose their mortgages, when, at the instance of Lodge, a member of the firm of Lodge & Henry, above referred to, Dillin and Witt entered into a written contract with Lodge & Henry, the then holders of the second mortgage, and with Rice, the mortgagor, whereby Lodge & Henry, as holders of the second mortgage,

agreed to keep paid all taxes and interest on the first and second mortgages on said land, and not to allow in any manner, the liens senior to the third mortgage of Dillin and the fourth mortgage held by Witt to grow larger than they then were, in consideration of which Dillin and Witt agreed not to commence foreclosure of their mortgages prior to December 1, 1890. If, however, the taxes were not paid when due, and the interest on said first and second mortgages should become delinquent, then Dillin and Witt might foreclose their mortgages. A few months after this agreement had been entered into, Lodge & Henry proceeded to foreclose the Clapp mortgage, then held by them, and procured a decree of foreclosure thereon in the district court of Pottawattamie county, and sold the half section for three thousand, four hundred and thirty-one dollars and sixteen cents, the full amount of their claim. This sale occurred on June 10, 1889, and the land was purchased by Lodge & Henry. March 10, 1890, Dillin, as a subsequent lienholder, redeemed the half section from the Lodge & Henry sale by paying to the clerk of the court the amount of Lodge & Henry's bid, with interest at ten per cent thereon. Lodge & Henry received and receipted for this redemption money. Before making this redemption, Dillin procured an abstract of title to the land, and discovered that upon the records of the county, Squires appeared to be the owner, as trustee, of the five thousand dollar mortgage which had been given by Rice to him. Dillin also caused inquiry to be made at Squire's office as to the condition of the interest payments on said mortgage, and was informed, as some of the evidence shows, that all the interest had been paid up to December 1, 1889. It was only after ascertaining, as he supposed, that the interest on the Squire mortgage had been paid up to December 1, 1889, that he, Dillin, determined to make the redemption.

After effecting the redemption stated, Dillin paid two hundred and forty dollars and ten cents to redeem the land from tax sale. It appears that after the date of the decree in the Lodge & Henry foreclosure suit, and prior to the redemption from the sale by Dillin, the two interest coupons of the five thousand dollar mortgage maturing June 1 and December 1, 1889, of one hundred and seventy-five dollars each, were purchased by Lodge & Henry, and assigned to them by the Rutland Savings Bank, of Rutland, Vermont, said bank having become the owner of the Squires mortgage. These interest coupons were held by Lodge & Henry at the time Dillin made the redemption heretofore mentioned, and then, after Dillin had effected his redemption, and after March 22, 1890, Dillin claims he first heard and knew these coupons were held by Lodge & Henry, and unpaid.

At the time of the redemption, the mortgage of five thousand dollars from Rice to Squires, as trustee, stood of record as when it was first executed and recorded, in the name of Squires, as trustee, and no assignment or transfer of it, or of any part thereof, appeared of record. July 8, 1890, the Rutland Savings Bank, being then the owner of the Squires mortgage, commenced proceedings for its foreclosure in the United States court, making Lodge & Henry and the defendants Dillin and Witt herein defendants in that action. Lodge & Henry appeared in that suit, and filed an answer and cross petition setting up their ownership of these two coupons, and asking a foreclosure of the mortgage as to them against plaintiff, and the defendants herein, Dillin and Witt. Thereafter, and about August 6, 1890, Dillin, for Dillin and Witt, paid to Squires, as the representative of the Rutland Savings Bank, five thousand, seven hundred dollars, being the amount claimed by them to be due upon the mortgage, and took an assignment of it to

Witt, who appeared in said United States court and dismissed the foreclosure suit. August 19, 1890, Witt released, on the margin of the record, all the land included in the mortgage, except the quarter section in 28, heretofore mentioned. September 18, 1890, and prior to the dismissal of the foreclosure suit in the United States court, Dillin sold one hundred and sixty acres of the land obtained under his redemption to the defendant Kenealy for five thousand, six hundred dollars. A foreclosure suit was instituted in the district court of Pottawattamie county upon the mortgage, as against the quarter of land in section 28, and a decree entered finding the proper *pro rata* share of the burden of the debt to be borne by said quarter to be one thousand, six hundred and fifty dollars. Said decree contained no reservations whatever. Neither plaintiff herein nor Lodge & Henry were parties to that suit. Lodge & Henry assigned the two coupons to plaintiff, who brings this suit to foreclose the mortgage as to them. Dillin and Witt deny plaintiffs' ownership of the coupons; aver that they have been paid, and also rely upon the written agreement heretofore referred to. They set up the prior foreclosure of the mortgage as to the land in section 28, and say that the remaining property described in the mortgage has been released. They also say that, in making redemption of the land, Dillin relied upon the representations that these coupons had been paid, and the fact that the record showed no transfer of them. Defendant Kenealy claims to be a purchaser in good faith, and for value, and without notice of any claim of plaintiff against the land, and that the mortgage was canceled, and no record notice was given of any transfer of the coupons. Plaintiff, in a reply, denies generally all the allegations of the answers, and also alleges that defendants are estopped, by reason of the decree of

foreclosure in the case of Lodge & Henry *v.* Dillin, Witt *et al.* in Pottawattamie district court, from claiming any rights, by virtue of their agreement with Lodge & Henry. The court below dismissed plaintiff's bill, and he appeals.

II. Three hundred and twenty acres of the four hundred and eighty acre tract owned by Rice were covered by four mortgages, which were liens in the following order: *First.* The five thousand dollar mortgage to Squire, trustee; *second,* the two thousand, six hundred dollar mortgage to Clapp, afterward acquired by Lodge & Henry; *third,* the one thousand, one hundred and forty-three dollar mortgage to Dillin; *fourth,* the five hundred and forty-three dollar mortgage to Witt. This was the condition of affairs on December 15, 1888, at which time the Dillin and Witt mortgages were past due, and the holders of them threatening foreclosure proceedings. Lodge & Henry, the holders of the second mortgage, for reasons which hereafter appear, desired Dillin and Witt to forbear foreclosing their mortgages, whereupon the following agreement was entered into, which was signed by the mortgagor, Lodge & Henry, and Dillin and Witt, viz.: "H. O. Rice, as owner, and Lodge & Henry, as holders of the second mortgage on S. W. 1-4, 28, E. 1-2 N. E. 32, E. 1-2 S. E. 29, all in twp. 76, range 41, agree to keep paid all taxes and interest on first and second mortgages on said land, and not to allow, in any manner, the liens senior to the third mortgage of C. D. Dillin and the fourth mortgage held by C. M. Witt to grow larger than such liens now are, in consideration of which the said C. D. Dillin and C. M. Witt agree not to commence foreclosure of their mortgage until the expiration of two years from December 1st, 1888. But in case the taxes on said land should not be paid when due, and the interest on the first and second mortgages should be allowed to become

delinquent, then the said Dillin and Witt are at liberty to commence foreclosure of their said mortgages." Defendants contend that under this contract Lodge & Henry were obligated to pay the very coupons upon which they sue in this action. Plaintiff, in answer to this claim, asserts that the agreement was without consideration; that as Dillin and Witt were made parties to the foreclosure by Lodge & Henry, and failed to appear or set up any claim under this agreement, they are now estopped from relying upon it; that Dillin and Witt knew, when Dillon made redemption from the sale on said foreclosure, that Lodge & Henry held these coupons, and that they were unpaid; that the proceedings in the United States court had prior to the purchase of the Squires mortgage by Witt were notice to defendants that Lodge & Henry held these coupons, and that they were unpaid; that, by reason of the redemption from Lodge & Henry, the Dillin and Witt claim against Rice was satisfied, and they can not now avail themselves of the agreement made with Lodge & Henry. The contract was an explicit agreement on the part of Lodge & Henry to pay the taxes on the land, and the interest on their own and the Squires mortgage, in consideration that Dillin and Witt would forbear to foreclose their mortgages for two years.

The agreement to forbear foreclosing was, as appears from the evidence, clearly for the benefit of Lodge & Henry, who held unsecured claims against Rice, the mortgagor, and they wanted him to have possession of the premises, so that he might from its proceeds pay such indebtedness. Dillin and Witt agreed to this, in case their security should be preserved unimpaired. Hence the contract was entered into. Lodge & Henry violated the contract, but that did not operate to relieve them from liability to Dillin and Witt, who in good faith observed it. There was a sufficient consideration

for the promise on the part of Lodge & Henry. It is well settled that an agreement to forbear, for a time, proceedings at law or in equity to enforce a well founded claim, is a valid consideration for a promise. 1 Pars. Cont., sec. 441; 3 Am. & Eng. Encyclopedia of Law, p. 836; *Lomax v. Smyth*, 50 Iowa, 223. See *Hamer v. Sidway*, 27 N. E. Rep. (N. Y. App.) 256. Whatever may be said as to Rice, Lodge & Henry, by carrying out the contract, would not be doing what they were in any event obligated to do, as they were under no legal obligation to pay the taxes, or to pay the interest on the Squires mortgage, in the absence of this agreement.

III. Did the decree in the foreclosure suit brought by Lodge & Henry, and in which Dillin and Witt were made defendants, determine of necessity the rights of the latter parties under the agreement heretofore mentioned? We think not. The two years provided in the contract would expire December 1, 1890; the foreclosure was had in April, 1889. The assignment of the coupons was made, as to one in June, 1889, and as to the other in December, 1889, and both were assigned after the termination of the foreclosure suit, and after the decree had been entered therein. There had, then, been no breach of the contract as to the Squires mortgage, or as to the payment of taxes, at the time this decree was entered. Clearly, matters can not be treated as adjudicated in the foreclosure case, which did not then exist. In so far as there had been no breach of the agreement, there could have been no action for a breach, and hence no adjudication as to rights subsequently accruing. Viewed in any light, it can not be said that the matters now relied upon by Dillin and Witt were involved in, or determined by, the foreclosure case. *Shirland v. Bank*, 65 Iowa, 96, 21 N. W. Rep. 200; *Goodenow v. Litchfield*, 59 Iowa, 226, 9 N. W. Rep. 107, and 13 N. W. Rep. 86; *Carl v. Knott*, 16 Iowa, 379; *Drake v. Vorse*, 42 Iowa, 653.

IV.   It is insisted that when Dillin made redemption from the sale under the Lodge & Henry foreclosure both he and Witt knew that these coupon were held by Lodge & Henry, and were unpaid.   We do not propose to review the testimony touching this matter.   It is conflicting.   From a consideration of all of it, however, the conclusion is justified that they did not know that these coupons were held by Lodge & Henry with the intention of ever making a claim thereon against the defendants herein. They were justified in assuming, in the absence of knowledge to the contrary, that Lodge & Henry had, or would, comply with their agreement as to the payment of the interest on the Squires mortgage, including these coupons.

V.   We do not deem it necessary to determine as to whether the proceedings in the federal court constituted constructive notice to Dillin and Witt, at the time Witt purchased the five thousand dollar mortgage, that these coupons were held by Lodge & Henry, and were unpaid.   Let it be conceded for argument's sake, that they did have notice.   Dillin and Witt knew that, by virtue of the agreement heretofore stated, Lodge & Henry were bound to pay these coupons.   Dillin and Witt, having on their part carried out the agreement, might confidently rely upon it, and their legal rights thereunder, regardless of any claim that Lodge & Henry might make as to these coupons.   Dillin and Witt having performed their part of the contract, and forborne to foreclose their mortgages for two years, the liability of Lodge & Henry to pay these coupons was absolute.   The result we have reached renders it unnecessary to consider many other questions discussed by counsel.

VI.   Appellant filed a motion to tax the costs of printing appellee's additional abstract and their argument to them.   Appellant's abstract was served upon

appellees in February, 1893. Their argument was served September 29, 1893. At the January term, 1894, and just prior to the time for submission of the case appellees served upon appellant an additional abstract, containing fifty-one pages, and an argument containing twenty-one pages. A motion to strike the abstract and argument was overruled, and appellant was compelled to ask for a continuance, which was granted. Upon the submission of the motion to strike, it appeared that the cause had been continued by agreement until the October term, 1893. While much of the matter contained in the additional abstract was necessary to a proper understanding of the case, there is no reason why it should be set out in the form of questions and answers, thereby unnecessarily incumbering the record; and there appears to be no good reason why this abstract was not filed earlier. The motion will be sustained to the extent of requiring the appellees to pay all costs of printing the additional abstract. The decree of the district court is AFFIRMED.