JENNIE A. STONEWALL, Appellant, v. J. A. DANIELSON et al., Appellees.

**FRAUDULENT CONVEYANCES:** Confidential Relations—Brothers and
1   Sisters. It will not be presumed that a confidential relation exists between parties on the simple showing that they were brothers and sisters.

**DEEDS:** Validity—Fraud—Evidence—Sufficiency. Principle reaffirmed
2   that, in an action to set aside a conveyance because of fraud, undue influence, or mistake, the proof must be clear, satisfactory, and convincing.

**GIFTS:** Inter Vivos—Consideration and Revocability. An executed, de-
3   livered, and accepted gift needs no consideration for its support, and is irrevocable.

**JOINT TENANCY:** Validity. Two or more persons may validly orally
4   agree that their accumulations of real and personal property shall be held and owned jointly, and that, upon the death of one of the parties, the property shall pass to the survivors, and that the final survivor shall take the property absolutely.

Headnote 1: 18 C. J. p. 424. Headnote 2: 18 C. J. pp. 445, 447, 449. Headnote 3: 28 C. J. pp. 620, 649. Headnote 4: 27 C. J. p. 221; 33 C. J. p. 905.

Headnote 1: 12 R. C. L. 488. Headnote 2: 12 R. C. L. 671. Headnote 3: 12 R. C. L. 932. Headnote 4: 7 R. C. L. 811, 812.

*Appeal from Calhoun District Court.*—R. L. McCORD, Judge.

JANUARY 10, 1928.

The plaintiff brought this action in equity, to establish her interest in the estate of Charles Danielson, deceased. Because the district court found adversely to her claim she appeals.— *Affirmed.*

*F. E. Northup* and *Jacobs & McCaulley,* for appellant.

*Stevenson & Stevenson* and *Kelleher & Mitchell,* for appellees.

KINDIG, J.—A statement of the facts is essential for an understanding of the issues involved.

Charles, J. A., D. V., Oscar R., and Hilda F. Danielson, and Jennie A. Stonewall, the appellant (née Danielson), were brothers and sisters. Three of them,—that is to say, J. A. and D. V. Danielson, defendants and appellees, and Charles Danielson, now deceased,—went to Calhoun County in the year 1883, to commence their life's work, adopting farming as their occupations. As a result of their efforts, they acquired approximately $100,000 of personal property and a section of land in the county of their endeavors. All these earthly possessions were accumulated under the oral agreement and understanding, made at the inception, that all property obtained, including real and personal, should be held by them as joint tenants. This conjunctive ownership was to cover not only the original, but all increase thereof and substitutions therefor; and upon the death of one of them, the same, under this compact, was to pass and vest in the two remaining; and in the event of the decease of the second, the title to said holdings was, under the arrangement, to become absolutely that of the last survivor. Faithfully carrying out this project, no member of the trio ever married.

On the first day of September, 1922, Charles died, survived by his brothers and sisters above named. Subsequently, on the fifth day of September of that year, Hilda F. and Oscar R. Danielson, together with Jennie A. Stonewall, deeded and quitclaimed any and all interest they may have had in the farms, and by assignment and bill of sale transferred all right, if any they possessed, in the chattels. Afterwards, on the 7th day of said month, Tobias Stonewall, the husband of Jennie A., executed and delivered to appellees a quitclaim deed covering said realty. Those "deeds" contained the following preamble:

"Know all men by these presents: That whereas, C. A. Danielson died intestate in Calhoun County, Iowa, on the 1st day of September, A. D. 1922, a single person, whose father and mother are both deceased; and the said C. A. Danielson never having married, and leaving no wife and no child or children surviving him, but leaving his brothers and sisters viz: —Hilda F. Danielson, Jennie A. Stonewall, J. A. Danielson, D. V. Danielson, and Oscar R. Danielson as his sole and only heirs at law, and

"Whereas, C. A. Danielson, J. A. Danielson, and D. V. Danielson were joint owners of an estate in joint tenancy and

were joint tenants in all the property owned and held by the said J. A. Danielson, D. V. Danielson, and C. A. Danielson, and

"Whereas, by an agreement heretofore entered into between the said J. A. Danielson, D. V. Danielson, and C. A. Danielson it was agreed that all of said property owned and accumulated by them should be owned by them as joint tenants, and upon the death of either of said J. A. Danielson, D. V. Danielson, and C. A. Danielson, all of the property should belong to the survivor or survivors."

Following this was the release and transfer clause; then appeared the signatures and acknowledgments. Jennie A. Stonewall first signed the instruments herself, and then she in her own hands carried the one to her husband for his signature and acknowledgment.

Probate proceedings on the intestate estate of Charles Danielson were duly had, reports made, approved, and final release of the administrator procured, during which time no claim was made or filed by appellant for any property or interest belonging to the "estate." Every particle and description of "property" first above named was listed there as "jointly owned" under the "tenancy" originally founded.

Finally, on the 28th day of January, 1926, appellant filed her petition asking that she be declared the owner of a one-fifteenth interest in all said acreage and other assets, and that an accounting be made to her of the rents and profits, for the reason that she "was induced to part with her interest:" First, "on the pretense and claim that the property was owned jointly by C. A. Danielson, deceased," and the two appellants; second, "when overwhelmed by emotion;" third, "without consideration," and "through misrepresentations, under the claim that the property would be held intact, and not be alienated and disposed of, but retained in trust" by appellants "for the use and benefit of the heirs at law of C. A. Danielson, deceased." Answering, the appellees pleaded the "joint tenancy, execution of the quitclaim deed and bill of sale," closing of the estate, payment of expenses of administration and inheritance tax, relying upon said instruments, and a general denial.

Upon the issues thus joined, a judgment and decree was entered in favor of appellees, and the appeal was taken to correct alleged errors, which will now be considered.

I. Nowhere in the record is there sufficient evidence to establish confidential relationship between appellant and appellees. Though they were brothers and sisters, no presumption arises to this effect. *Curtis v. Armagast,* 158 Iowa 507; *Mallow v. Walker,* 115 Iowa 238; *Chidester v. Turnbull,* 117 Iowa 168; *Steen v. Steen,* 169 Iowa 264; *Lavelle v. Lavelle,* 164 Iowa 99; *Halbur v. Singsank,* 198 Iowa 1246. *Reeves v. Howard,* 118 Iowa 121, contains the following statement:

1. FRAUDULENT CONVEYANCES: confidential relations: brothers and sisters.

"We think no case can be found where the relationship of brother and sister, both of mature age, living in separate homes, with no special dependence of either upon the other, is held to taint any gift or transfer of property between them with a presumption of fraud."

In the case at bar, Mrs. Stonewall lived with her husband and family separate and apart from her brothers. She was 56 years of age, and the appellants were much older. There was "no special dependence of either upon the other."

II. At the inception of this controversy, the burden of proof was, and at all times remained, upon appellant to show fraud, undue influence, misunderstanding, and mistake; and at this juncture the proof must be clear, satisfactory, and convincing. *Epps v. Dickerson,* 35 Iowa 301; *Johnson v. Tyler,* 175 Iowa 723; *Schrimper v. Chicago, M. & St. P. R. Co.,* 115 Iowa 35; *Harvey v. Phillips,* 193 Iowa 231; *Edmunds v. Ninemires,* 200 Iowa 805; *Brechwald v. Small,* 180 Iowa 22.

2. DEEDS: validity: fraud: evidence: sufficiency.

Hilda F. and Oscar R. Danielson confirm their own action in making the conveyances, and are not seeking to overcome or repudiate their doings in the premises. Quite alone is the "testimony" of appellant, and in many places it is inconsistent, but at all times her declarations are contradicted by other witnesses equally as credible as she. *Johnson v. Tyler,* supra, embodies this apt discussion:

"It is elementary that, in the absence of corroborating evidence or circumstances, a court is not justified in overturning a legal title, solemnly conveyed by written instrument, duly executed and acknowledged, upon the testimony of a single witness, when that witness is contradicted by the testimony of another equally credible, as to the existence of all facts alleged and re-

lied on as a ground for granting the relief prayed for. It is also well settled that courts will not grant relief on the ground of fraud, unless the fraud alleged and relied upon, which, if proved, would justify the court in granting relief, is established by clear, convincing, and satisfactory evidence.''

So here there is no substantial or reliable evidence of fraud, misrepresentation, or duress, and the alleged confidential relationship does not exist. Rather, a study of appellant's utterances will compel the inevitable conclusion that there was no deceit or imposition practiced upon her; but, on the other hand, the part played by this appellant was freely and advisedly done, according to her own judgment and discretion. Accompanied by two of her own children, appellant signed and acknowledged the papers in question, and, as has been previously indicated, she willingly carried the document to her husband which he was to execute, and after his performance in this regard, she herself returned it to appellees. These latter transactions were accomplished in the privacy and seclusion of appellant's own home in the presence of the members of her family, without foreign influence or domination. Referring to her own statements, we find that she knew the amount of ''property'' involved, and thoroughly understood the relationship of her three brothers concerning ''the joint tenancy.'' Only as an afterthought did it ever occur that a rejection of this transaction should be attempted.

III. Consideration is not necessary to support a gift, assuming, without deciding, that the incident here involved amounted to that. Such donation, after execution, delivery, and acceptance, is irrevocable. *Tucker v. Tucker,* 138 Iowa 344; *Reeves v. Howard,* supra; *Fitzgerald v. Tvedt,* 142 Iowa 40; *Miller v. Williams,* 195 Iowa 1305; *Gould v. Logan,* 198 Iowa 935. *Reeves v. Howard,* supra, expresses the thought in this language:

3. GIFTS: *inter vivos:* consideration and revocability.

''The law of gifts *causa mortis* which recognizes a transfer of personal property by a title conditional upon the death of the donor is, in the nature of things, inapplicable to the transfer of title to real property. But there is nothing in this transaction having any resemblance to a gift of personal property *causa mortis.* The deeds are absolute in form, and fully delivered during the life of the grantor. It is true that they constitute

a gift, but there is no word or fact in evidence to show that the conveyances were conditional. The title passed at once. That a man may lawfully convey his lands as a gift or as a token of love and affection, and that such grantee holds by as perfect title as the grantor could convey, none will deny.''

When once made final "by execution and delivery," there can be no revocation. See *Mathers v. Sewell*, 193 Iowa 35.

IV. Fundamentally, the rights and equities of appellees need not be based upon the doctrine "of gifts," nor are the deeds and assignment essential; but rather, appellees' "title" can be substantiated and sustained upon the foundation of the original contract. That can be true without a technical discourse on the question as to whether or not there was created "a joint tenancy." It is enough to find and hold that the agreement between the original three was legal and binding, and not in conflict with the laws of Iowa or public policy. Necessary elements of validity are present in this basic stipulation. *Stewart v. Todd*, 190 Iowa 283. *Wood v. Logue*, 167 Iowa 436, states:

4. JOINT TEN-
ANCY: validity.

"That an estate of joint tenancy may exist in this jurisdiction does not appear to be denied by counsel, and, indeed, could not well be. Estates of joint tenancy were well known at common law, and, though they have fallen into quite general disuse, are not entirely obsolete. * * * But, laying aside the question as to what name or designation we shall apply to the transaction between the grantor and grantees, what good reason can be assigned in law or equity for the court's refusing to give it effect according to its clear intent? * * * Such a disposition of property is not obnoxious to any statute of this state or to any recognized principle of common law, nor can we conceive of a good reason for holding it to be against any accepted rule of public policy.''

An interest in real estate may be created by an oral "contract," under certain circumstances and conditions. *Stiles v. Breed*, 151 Iowa 86; *Horner v. Maxwell*, 171 Iowa 660. Each of the primary contractors did his part. Fairness dictates that the fruit of such labor shall be forthcoming. Support for this pronouncement may be found in the analogy contained in the following cases: *Francis v. Francis*, 180 Iowa 1191; *Bevington v. Bevington*, 133 Iowa 351; *Stennett v. Stennett*, 174 Iowa 431;

*Jordan v. Doty,* 200 Iowa 1047; *Groh v. Miller,* 196 Iowa 1367; *Garman v. Wettengel,* 199 Iowa 1150; *Ozias v. Scarcliff,* 200 Iowa 1078.

Manifestly, appellant had no interest in the "property" under litigation.

The judgment and decree of the district court should be, and hereby is, affirmed.—*Affirmed.*

STEVENS, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.