SENECA CLARK, Appellant, v. PERRY BECK, Appellee.

No. 39618.

MAY 7, 1929.

*Edwards, Longley, Ransier & Harris,* for appellant.

*Sager & Sweet,* for appellee.

KINDIG, J.—On the 22d day of March, 1926, Seneca Clark, the plaintiff appellant, and his wife, Jeanette, conveyed all their interest in a certain quarter section of land in Bremer County to the defendant, appellee, for the consideration of $2,000. Thereafter, on September 1st, the appellant commenced the present suit, to rescind and set aside that transfer, on the ground of fraud perpetrated by appellee in procuring the title aforesaid. That fraud consisted of alleged misrepresentations made by appellee to appellant in reference to the inheritance laws of Iowa. The record title to said real estate, at the time of the above-named transaction, was in the estate of Libby Beck, appellee's deceased wife. There were two heirs surviving the deceased,— one was her husband, the appellee, and the other her father, the appellant. Libby Beck left no children, and she was predeceased by her mother. Hence, under Section 12017 of the 1924 Code, appellant and appellee alone were entitled to inherit her property. This statutory enactment reads as follows:

"If the intestate leaves no issue, the whole of the estate to the amount of seventy-five hundred dollars, after the payment of the debts and expenses of administration, and one half of all of the estate in excess of said seventy-five hundred dollars shall go to the surviving spouse and the other one half of said excess shall go to the parents. * * *"

But two questions are here involved: First, did appellee make the alleged fraudulent representations; and second, if so, did such representations amount to fraud? It is claimed appellee obtained the conveyance aforesaid in Nebraska, through the following pretense, made by way of answer to appellant's inquiry concerning the inheritance laws of this state:

"The law of Iowa will give me [appellee] one half of the property. It will give me [appellee] $7,500 of the other half, and it will give me [appellee] possession of the land until after your [appellant's] death, and then the property will be mine [appellee's]."

Such are the questions.

I. Under some circumstances and conditions, a false state-

ment concerning what is the law of a foreign jurisdiction (appellant here was a resident of Nebraska) may amount to actionable fraud, and, as such, enable the innocent victim to rescind a contract procured thereby. *Schneider v. Schneider,* 125 Iowa 1; *Commercial Sav. Bank v. Kietges,* 206 Iowa 90. See, also, *Wood v. Roeder,* 50 Neb. 476 (70 N. W. 21).

However, we do not find it necessary to, and therefore do not, decide whether the statement attributed to appellee constitutes fraud in the case at bar; for, in all events, before appellant can avail himself of that legal principle, it is necessary for him to prove, by clear and convincing evidence, that the false representation concerning the Iowa Inheritance Law was actually made by appellee. *Stonewall v. Danielson,* 204 Iowa 1367; *Harvey v. Phillips,* 193 Iowa 231; *Blasier v. Doyle,* 197 Iowa 652; *Johnson v. Tyler,* 175 Iowa 723; *Brechwald v. Small,* 180 Iowa 22. As shown by the cited cases, when a solemn instrument of title is attacked for fraud in its procurement, a mere preponderance of evidence is not sufficient; but, on the other hand, the proof must be "clear, satisfactory, and convincing." *Edmunds v. Ninemires,* 200 Iowa 805.

Therefore, we are constrained to hold that appellant has not met that requirement.

II. Our conclusion in that regard is reached after a careful study of the entire record. A review of the facts and circumstances revealed by the evidence will elucidate at this juncture.

Three witnesses, including appellant, testified for him to the general effect that appellee made the false statement in reference to the Iowa Inheritance Law. Denial thereof was made by appellee, and in addition thereto, he told what in fact was said. Apparently, the purported false statements are contended to have been made at McCook, Nebraska, on the day the deed was executed, March 22, 1926. Material facts throwing light on that event arise out of the previous history of the parties and the witnesses.

Appellant, Seneca Clark, in 1884, lived in northern Iowa, was married, and had three children. These children were Laura Coffin (née Clark), Edward Clark, and Libby Beck (appellee's wife, now deceased). During that year, for some reason, appellant disagreed with his wife, and because thereof, left her and the three children. Libby (appellee's wife, now deceased) was

then 10 years old; while the son, Edward, was 8 years of age, and the daughter Laura was about 4 years old. Before leaving, appellant conveyed a quarter section of land which he owned in northern Iowa to his father-in-law, at his wife's request. Subsequently, appellant canvassed a district in the general vicinity for the purpose of selling portraits, and then left for Nebraska, finally locating at McCook. In that place, he married a second wife, who afterwards died, and later, he married the present wife, Jeanette, who executed with him the deed in question. She, therefore, is his third spouse.

While the three children were growing to manhood and womanhood, their mother, the first wife of appellant, kept them on the farm. Some years ago, appellant's first wife died, apparently without his knowledge. None of appellant's children, it seems, ever went to see him. About 11 years before Libby died, appellant visited her and appellee. Evidently appellant paid little attention to his first family. He did not know when appellee and Libby were married. Soon after Libby Clark and appellee became husband and wife, they purchased the farm in question for a consideration of $11,000. Of this consideration Libby paid $3,000, and appellee $2,000, as a cash sum, and a mortgage was given for the balance. Afterwards, appellee paid the balance himself. Title, however, was taken in the name of Libby, and so it remained until her death, even though appellee had paid the greater portion of the original purchase price, and then expended approximately $15,000 additional for the purposes of improvement, including fences, buildings, etc. Time went on, and appellee and Libby discussed the advisability of making a will, but none was ever actually executed. Resultantly, Libby died intestate, leaving, as before suggested, her husband, the appellee, and her father, the appellant, as her only heirs at law.

Upon application duly made, appellee was appointed administrator of his deceased wife's estate, and in the course of the administration, he consulted attorneys, who advised him of appellant's interest in the land. Decision was made to purchase that equity, and accordingly a trip to McCook, Nebraska, was contemplated. Previous to making it, however, a deed to be executed by appellant and his wife was prepared by appellee's lawyers. Armed with this instrument, appellee notified Laura

Coffin and her family that he would call upon them at or about a named date. Accordingly, appellee left his home and journeyed to Waterloo, where Laura Coffin resided. At about the same time, appellee notified Edward Clark, appellant's son, of the contemplated journey to McCook, and asked if he had any word to send to his father. An emphatic negative reply was made.

When appellee arrived at the home of Laura Coffin, at Waterloo, he also informed her of the intended trip to McCook, Nebraska, as well as the purpose thereof. Here a dispute arises concerning just what was said by the respective participants in the conversation. Laura Coffin says that appellee asked her to make the trip with him, in order that she might use her influence in convincing appellant that he should sign the deed; while appellee contends that she asked permission to go with him, for the purpose of visiting her father. So, in order to be accommodating, appellee declares, he promised to pay her railroad expenses. Regardless of what the fact may be in reference to that, appellee and Laura Coffin did leave Waterloo and go to McCook, Nebraska; and while there, they called upon appellant, who, together with his wife, Jeanette, as before explained, executed the instrument of conveyance.

After arriving at McCook, appellee and Laura Coffin went to appellant's home. He met them at the door, but did not recognize either one. Immediately after the introduction, appellee informed appellant of Libby's (appellee's wife's) death. To this appellant replied he had read of it in the newspaper. Following this, appellant, appellee, and Laura Coffin indulged in conversation for a while, and then the object of the visit was broached.

Material at this point are appellant's own statements in reference to what was said by appellee. They are as follows:

"She [appellee's wife] died without leaving a will, and I came to settle with you. * * * He told me that Libby [appellee's wife] put $3,000 into the farm originally, and he said he put in $4,000."

Appellee maintains that he said to appellant at that time:

"Mr. Clark [appellant], my wife didn't leave any will, and so you and I are the heirs."

Obviously, appellant knew of the Iowa land in controversy.

He had been on the place himself, and knew its value, in a general way. No complaint is here made that appellee in any manner or way misrepresented the worth of that farm. Deceit is not predicated upon that. Only one proposition is relied upon to furnish the basis for sufficient false representations to cancel and set aside the deed obtained by appellee from appellant while at McCook, Nebraska, during the conversation just described. Dispute, as before indicated, arises concerning what was said in reference to the Iowa inheritance laws. Claim is made by appellant that appellee used the following language, in answer to an inquiry:

"The law of Iowa will give me [appellee] one half of the property. It will give me [appellee] $7,500 of the other half, and it will give me [appellee] possession of the land until after your [appellant's] death, and then the property will be mine [appellee's]."

Contrary to this, appellee asserts that he did not make that reference to the Iowa law, but in lieu thereof, said to appellant:

"I [appellee] could hold $7,500 and half of the balance, but that I [appellee] would like to buy him [appellant] off, or buy his [appellant's] interest."

A settlement was reached, in any event; and appellant, together with his present wife, signed a deed brought by appellee from Iowa for that purpose. Acknowledgment thereof was duly made before a notary, and the consideration of $2,000 paid, as earlier herein suggested. Through part of the conversation above related, appellant's wife was present, and apparently Laura Coffin was there throughout the transaction. Two meals were taken at appellant's home by appellee and Laura Coffin, and late in the evening, they left Nebraska, and came to Iowa by way of Waterloo.

Manifestly, appellant was satisfied with the deal until envoys from Iowa called upon him, and asked that he sign a petition to set the conveyance aside. The first time, he refused. Then appellant's son, Edward Clark, and a grandson called upon the old gentleman a second time, and thereby he was induced to sign the petition which is the basis for the present proceedings. Cause for this interest in the litigation, evidenced by Edward

Clark, his family, and Laura Coffin, seems to be because they desired some portion of appellee's property which was bought in the name of Libby Beck (appellee's deceased wife). Intention to defraud is sought to be laid on the ground that appellee rushed or hurried the transaction through, without permitting appellant to consult with anyone, especially his niece, one Mrs. Bowen, who lived at McCook, Nebraska. Laura Coffin says that appellant asked to have this lady called, and that appellee objected thereto. Contradiction thereof, however, is made by appellee. Furthermore, the notary called was a reputable lawyer in the Nebraska community, and well known to appellant. Also Mrs. Bowen was at the appellant's home during the afternoon, perhaps after the deed was signed, but while appellee and Laura Coffin were still there. Prior to making the acknowledgment to the deed, appellant asked the said attorney whether or not it was all right to sign the deed, and apparently received an affirmative answer.

Clearly, the settlement was reached in the forenoon, but the instrument was not signed and acknowledged until in the afternoon. Opportunity during the interim was afforded appellant to consult with the lawyer, his niece, Mrs Bowen, or anyone else. Plainly, the alleged scheme to prevent consultation and advice does not appear. Seneca Clark, the appellant, at the time of this deal, was approximately 88 years of age; while appellee was 63 years old. Yet appellant was bright, active, and intelligent, and it is not claimed that he did not have mental capacity to make the contract and execute the instrument of transfer. All the surrounding circumstances tend to corroborate the contention of appellee when he says that no false statement was made in reference to the inheritance laws of Iowa. Both parties had lived in Iowa, and appellant, as well as appellee, had owned land there. Each was a layman, unversed in the law. Mrs. Clark, appellant's present wife, it is true, corroborates him in reference to what was said by appellee; yet she, being also a layman, might have misunderstood some of the statutory language. Indication, at least, is made to that effect, when the entire record is considered.

$2,000, it is argued, is such an insufficient consideration for the interest of appellant as to indicate fraud, in itself. However, that is not quite true, when everything is taken into account. Parenthetically, it is again recalled that Libby Beck, appellee's

wife, put only $3,000 into this property. The rest of the land was paid for by appellee himself. Suggestion of this was made to appellant. Wherefore, no doubt, he took that fact into consideration, when agreeing to sell his own interest for $2,000. When thus viewed, the payment made by appellee to appellant is too great, rather than too small. (Appellee would inherit $7,500 of his wife's estate before appellant would receive any part thereof.) One other alleged substantiating witness must be given thought. Reference is made to Laura Coffin. Her testimony at places contradicts both appellant and appellee. She says that appellee told her, and at least indicated to appellant, that, after the deed in question was obtained, the entire property would be conveyed in turn by appellee to Laura Coffin and Edward Clark. While failure of the alleged reconveyance to Laura Coffin and Edward Clark is immaterial and irrelevant, so far as the present litigation is concerned, yet it throws some light upon the motives of that witness in the premises, and tends to explain some of her almost absurd statements regarding what was said by appellee. Why would appellee be willing to purchase the interests of appellant in the aforesaid property, and then, after making the expenditure, transfer the entire estate to Laura Coffin and Edward Clark? By way of explanation, appellee says that his wife, while living, had intimated that she might like to will a sum, placed at $5,000, to her sister and brother, Laura Coffin and Edward Clark. Of course, Laura Coffin and Edward Clark were not heirs of appellee's wife's, and, in the absence of the will, were not entitled to any part of her estate, under the circumstances. Nevertheless, appellee told Laura Coffin that he was willing to give her, and possibly her brother, the $3,000 interest which their sister, Libby, had originally put into the farm. Consistent with this idea, appellee actually paid to Laura Coffin $1,000 when they returned from Nebraska, and this she accepted.

Moreover, it appears that appellee, even while at McCook, had the same thought in mind; because he had a conversation with appellant in reference to the latter's delivery of the $2,000 purchase money to Laura and Edward. That gift the appellant promised to make, and appellee so informed Laura Coffin. Reason appears why appellant would so conduct himself. He had deserted these children, knew but little about, and paid only slight attention to, them. Undoubtedly, the thought occurred to ap-

pellant that Libby's money should be returned to her brother and sister, to whom she herself had indicated it should go. Beyond a peradventure of a doubt, appellee tried to carry out his wife's wishes in reference to that matter. Appellant failed to deliver the proceeds of the $2,000 check to his children, Laura Coffin and Edward Clark. This disappointment in failing to receive that money, or any part of Libby's estate other than the $1,000, caused them to become unfriendly to appellee. Thus explanation can be found of the inconsistency between the testimony of appellee and Laura Coffin.

We have not attempted to set out all the incidents found within the record, but only those showing the general trend of the facts. Measured by the circumstances and conditions surrounding the entire affair, it is very clear that the trial court was justified in finding the appellant did not meet the burden of proof. Under such circumstances, the appellant cannot be permitted to rescind the contract and obtain the cancellation of the deed.

Therefore, the judgment and decree of the district court should be, and hereby is, affirmed.—*Affirmed*.

ALBERT, C. J., and EVANS, FAVILLE, WAGNER, and GRIMM, JJ., concur.