CLARA H. GOFF, Appellee, v. MARGUERITE BEVERIDGE MILLIRON, Appellant; WILLIAM H. WILSON et al., Appellees.

No. 43440.

APRIL 7, 1936.

REHEARING DENIED SEPTEMBER 25, 1936.

George Harnagel and John McLennan, for appellant.

Henry & Henry, for appellee Goff.

McLennan & McLennan, for appellee Wm. H. Wilson.

MITCHELL, J.—This is a suit to foreclose a mortgage executed by William H. Wilson, covering real estate located in the city of Des Moines. Mortgage and notes were sold, assigned, and transferred to Mrs. Clara H. Goff, plaintiff. Marguerite Beveridge, now Marguerite Beveridge Milliron, having been married since this action was started, and who will be referred to hereafter as Mrs. Milliron, was made a defendant because she executed an extension agreement, under which it is claimed she became personally liable, and because she was the owner of certain tax sale certificates covering the mortgaged property.

William H. Wilson does not appear to have made any defense, but Mrs. Milliron filed a separate answer in which she pleaded the following defenses:

(1) That no part of the mortgage was due except the payment mentioned in the extension agreement, which became due on the 15th day of October, 1934, and that the action was prematurely brought.

(2) That her signature to the extension agreement was secured by fraudulent statements.

(3) That she was the owner of certain tax sale certificates covering said property, and she signed a "waiver of priority," subordinating her interest in the property to the lien of said mortgage, in consideration of the extension of said mortgage, and that plaintiff violated the agreement by starting suit to foreclose; that she was entitled to a first lien on the property on account of said tax sale certificates.

(4) She further asked that the "waiver of priority" be

declared void as it was without consideration, and that the lien of tax certificates be established as a first lien, prior and superior to the mortgage.

Evidence was offered, and the lower court entered decree, giving the plaintiff judgment against the defendant William H. Wilson, foreclosing the mortgage, but releasing the defendant Mrs. Milliron from personal liability under the extension agreement, and decreed that she had a first lien on the mortgaged premises on account of her tax sale certificates in the sum of $877.67, prior and superior to the lien of the plaintiff's mortgage.

Neither party was satisfied with the decree and both have appealed. Marguerite Beveridge Milliron having served her notice of appeal first will be designated the appellant, and Clara H. Goff the appellee.

William H. Wilson was the owner of lots 6 and 7 in block 19, Highland Park, city of Des Moines, Iowa. On the 15th day of October, 1928, he executed and delivered to the Iowa Securities Company five promissory notes in the total sum of $5,000. To secure the payment of said notes, Wilson executed and delivered a mortgage covering said premises. The notes and mortgage were sold and assigned to Clara H. Goff, who is the present owner of same. The real estate covered by the mortgage was sold at tax sale on December 10, 1930, and in October of 1932 Mrs. Milliron purchased these tax certificates from the original buyers. In December of 1933 only $250 of the amount due had been paid and the remaining notes were all past due and unpaid in the total sum of $4,750. There was also some past-due interest. The tax sale certificates were outstanding and two of them were more than three years old, so that the tax sale purchaser was entitled to the tax deed. It therefore became necessary either to foreclose the mortgage or to make some agreement with the holder of the tax certificates. W. W. Beal, who was the president of the Iowa Securities Company, entered into negotiations with Mrs. Milliron and an instrument known as a "waiver of priority" was made and executed by her. Under the terms of this instrument, in consideration of the sum of $1 and the extension of the notes and mortgage covering the property owned by Wilson, who is the father of Mrs. Milliron, it was agreed that any right, title, or interest that Mrs. Milliron might have in or to said real estate on account

of said tax sale certificates and any subsequent taxes paid on said real estate should be junior and inferior to the lien of the mortgage. On the same day that the "waiver of priority" was executed and shortly afterwards, an extension agreement was entered into between Clara H. Goff, William H. Wilson, and Marguerite Beveridge Milliron, under the terms of which the principal payments on the notes and mortgage were extended for a period of time.

■■■ I. The first proposition with which we are confronted is the contention of the appellant that there was no default in the payment of the debt and that the action to foreclose was prematurely brought.

It is the contention of Mrs. Milliron that under the terms of the extension agreement there was nothing due upon the notes and mortgage until October 15, 1934, and that as this action was commenced on August 22, 1934, it was prematurely brought.

It is the claim of the appellee and there is evidence in the record that there was a balance of $68.50 due on the interest owing on April 15, 1933; that the interest due on October 15, 1933, in the sum of $142.50 was unpaid; that the interest due April 15, 1934, in the amount of $142.50 was unpaid. In the extension agreement, there is no reference made to the first two items of interest, which were unpaid. It provides for the payment of the principal sums, specifying the amounts and the dates upon which they shall be paid, and then provides "at the rate of 6 per cent payable semiannually, all other conditions and terms of the loan and of the mortgage securing said notes to remain in full force as originally agreed, said mortgage to be a first lien upon said premises." We thus find that the extension agreement does specifically provide for 6 per cent interest, payable semiannually, and, further, that all other conditions and terms of the loan and of the mortgage securing said notes are to remain in full force. The mortgage and the notes provided for 6 per cent interest, payable semiannually.

It is not necessary for us to take up the question of the interest which was due prior to the time the extension agreement was signed. There is no question that the semiannual interest due under the terms of the notes and mortgage, and extension agreement, was due April 15, 1934, and it was not paid. Mrs. Milliron complains that it was not mentioned in

the extension agreement. But this interest became due after the extension agreement had been executed and no reference could possibly be made in the extension agreement to the payment of the interest other than that which was included, to wit, at the rate of 6 per cent, payable semiannually. There was, therefore, due upon the mortgage on April 15, 1934, interest in the amount of $142.50, which was unpaid at the time the foreclosure was commenced. Under the terms of the mortgage and the note, "default in the payment of interest shall at the option of the lawful owner of the note and mortgage cause the entire amount to become due and payable." This option was exercised by Mrs. Goff. The lower court was right in holding that the action was not prematurely brought and in entering decree of foreclosure.

■■■ II. Appellee claims in her appeal that the lower court was in error in holding that the extension agreement was obtained from Mrs. Milliron by fraud, and that she did not become personally liable by the execution thereof. It was alleged in the answer of Mrs. Milliron that her execution of the extension agreement was secured by reason of fraudulent statements made to her that there was no personal liability on her part.

We are confronted here with a record in which there is not one word of evidence of fraud. This case was submitted and tried at about the same time that the case of Beal, Trustee, v. Wilson, was tried, but the cases were not tried together; they were separate actions, brought by different parties and submitted separately to the court. The appellant refers to the other action, but, of course, we cannot consider, in this case, the record in the Beal case. We are bound by the record which is submitted in this cause, and this record does not show any evidence in support of the allegations that the extension agreement was secured by fraud.

■■■ It is elementary that fraud is never presumed, but must be alleged and proved by the party asserting the claim of fraud, and the proof must be clear, satisfactory, and convincing.

In Kilts v. Read, 216 Iowa 356, at page 365, 249 N. W. 157, 161, this court said:

"We quote from the case of Johnson v. Tyler, 175 Iowa 723, 157 N. W. 184, 187:

" 'It is also well settled that courts will not grant relief

on the ground of fraud unless the fraud alleged and relied upon, and which if proven would justify the court in doing so, is established by clear, convincing, and satisfactory evidence.' See, also, Epps v. Dickerson, 35 Iowa 301; Ley v. Metropolitan Life Ins. Co., 120 Iowa 203, 94 N. W. 568.

"A mere preponderance of the evidence is not sufficient. Edmunds v. Ninemires, 200 Iowa 805, 204 N. W. 219; Clark v. Beck, 208 Iowa 156, 225 N. W. 353.

"Fraud is not presumed. And in this class of cases, especially where title to real estate is involved, it must be established by clear, convincing, and satisfactory evidence. Schrimper v. C., M. & St. P. R. Co., 115 Iowa 35, 82 N. W. 916, 87 N. W. 731; Harvey v. Phillips, 193 Iowa 231, 186 N. W. 910; Edmunds v. Ninemires, supra; Epps v. Dickerson, supra; Johnson v. Tyler, supra."

In re Estate of Kinnan, 218 Iowa 572, at page 576, 255 N. W. 632, 635, this court said:

"In order to establish a claim or defense based upon fraud or collusion it is necessary to both allege and prove the allegations. It is the settled rule of law in this state that fraud can only be established by clear, convincing, and satisfactory evidence, and will not be presumed, but must be proved. The burden of proving fraud rests upon the party who asserts it. Smith v. Waterloo, C. F. & N. R. Co., 191 Iowa 668, 182 N. W. 890; Henderson v. Ball, 193 Iowa 812, 186 N. W. 668; Stephenson & Peterson v. Svenson, 187 Iowa 802, 174 N. W. 570. * * *

"There was no evidence introduced in this record tending in any manner to establish the allegations alleged in the application. In the absence of any showing in the record tending to establish such allegations, it was error on the part of the lower court to set aside the allowance of said claim."

It therefore follows, in the case at bar, there being no evidence of fraud, the lower court was in error in holding that the extension agreement was obtained from the appellant by fraud, and since the extension agreement bound Mrs. Milliron to pay the obligation sued upon, judgment should have been rendered against her for the amount of the debt.

■■■ But, the appellant says there was no consideration for the execution of the "waiver of priority" by her, subordinating

her interest in the property under the tax sale certificates to the lien of the appellee's mortgage. In answer to this, the appellee says that the extension of the indebtedness due from William H. Wilson was a valuable consideration for the "waiver of priority" by Mrs. Milliron, Wilson's daughter, even though said consideration moved to her father rather than to her individually. It must be kept in mind that the waiver of priority and the extension agreement were executed at practically the same time and were in fact but one transaction although two separate written instruments were involved.

The original debt in the sum of $5,000 was incurred by William H. Wilson. It was evidenced by certain notes, payable at varying maturity dates, and was secured by a mortgage upon real estate. Mrs. Milliron was the daughter of William H. Wilson, the borrower, and she had acquired the tax sale certificates. There had been default in the payment of both the principal sums due on the note and the mortgage, and the interest, and the loan could have been foreclosed for failure to pay the principal, the interest, and the taxes. The first tax sale had been held in December of 1930. It was therefore obvious that the mortgage had to be foreclosed unless payment of the debt was extended, and payment of the debt could not be extended with safety unless the taxes were paid and the holder of the tax sale certificates agreed to subordinate her interest in the property to the lien of the mortgage. The parties thereupon agreed that Mrs. Milliron would sign a waiver of priority, agreeing that her interest under the tax sale certificates should be junior to the lien of the mortgage, and that she and her father, the original borrower, would sign an agreement extending the date of payment. The papers were thereupon prepared and executed, Mrs. Milliron signing what is known as the "waiver of priority" which recited that Clara H. Goff had been requested to execute an agreement with Mrs. Milliron and William H. Wilson for the extension of the date of payment of the balance of the debt, in the amount of $4,750, and which provided that in consideration of the extension of the note and mortgage Mrs. Milliron agreed that the lien of the tax sale certificates which she owned would be junior and inferior to the lien of the mortgage. This instrument was duly acknowledged and recorded. On the same day, and within a short time after the signing of

the waiver of priority, Mrs. Milliron and her father, the original borrower, signed the extension agreement.

It is the claim of Mrs. Milliron that there was no consideration for the signing of the waiver of priority. The extension of the time for payment of the debt owing by William H. Wilson was a valuable consideration for the execution of the extension agreement and the waiver of priority by Mrs. Milliron even though she was not liable for the original indebtedness.

In Anderson v. Lemker, 180 Iowa 167, at page 170, 162 N. W. 7, 8, this court said:

"It may be as contended that he derived no advantage from the transaction but it does not follow therefrom that there was no consideration for his undertaking. A detriment may be a sufficient consideration as well as an advantage or benefit. That plaintiff, in parting with his goods in reliance on defendant's credit authorized to effectuate his purpose in enabling his son-in-law to operate his farm, certainly worked a detriment which constituted an ample consideration for defendant's undertaking to pay the account."

In Guetzlaff v. First National Bank, 198 Iowa 459, at page 463, 198 N. W. 517, 518, this court said:

"But, notwithstanding this, we think there was sufficient consideration in law to support the contract of guaranty. It was not necessary that there be any consideration moving from the bank to the guarantor. The extension of time on the indebtedness to the principal debtor, R. E. Guetzlaff, was sufficient consideration to support the contract of guaranty. Williamson Heater Co. v. Whitmer, 191 Iowa 1115, 183 N. W. 404; Taylor, Thomas & Co. v. Wightman, 51 Iowa 411, 1 N. W. 607; Burke v. Dillin, 92 Iowa 557, 61 N. W. 370; Koon v. Tramel, 71 Iowa 132, 32 N. W. 243; Queal & Co. v. Peterson, 138 Iowa 514, 116 N. W. 593, 19 L. R. A. (N. S.) 842. Appellee desired that the time be so extended for the benefit of the debtor who was his tenant."

In the case of American Commercial & Savings Bank v. Kramer, 206 Iowa 49, at page 50, 219 N. W. 931, this court said:

"Whether the defendant received any consideration is not the sole criterion in such a case. It is sufficient if the payee

parted with consideration even though the particular signer received none of it. In this case consideration did pass from the payee to Goodman by the extension of time. This extension was consented to by the payee on the condition that the wife would sign the agreement. In the first instance, Goodman agreed that he would procure her signature. He did procure it. The condition being thus performed, the extension was created. Upon such a state of facts the defense of want of consideration is wholly precluded. First Nat. Bank v. Phillips, 203 Iowa 372, 212 N. W. 678.''

And in the case of Commercial Savings Bank v. Carey, 207 Iowa 1060, at page 1062, 224 N. W. 62, 63, this court said:

''In other words, was there a consideration for her signature to the note and mortgage? It is quite apparent under the law and the facts that there was a consideration for her signature. The renewal note signed by the wife, Sylvia, was executed to cover the indebtedness that was then due. The husband desired an extension of time. The appellee consented to an extension of time upon the express condition that the wife Sylvia would sign the new note. Both of the Careys complied with the prescribed condition, and by said compliance an extension of a past-due indebtedness was secured, and there was a return of the old note. The written instrument imported a consideration. Section 9440, Code 1927. * * * An antecedent or pre-existing debt constitutes value. Section 9485, Code 1927. Nor may it be questioned that an extension of time payment to a debtor furnishes adequate consideration for the signature to a new note by another for a debt owed by the principal debtor. Mohn v. Mohn, 181 Iowa 119, 164 N. W. 341. * * *

''It is a well-settled rule that where a holder of an obligation agrees to extend the due date thereof, upon condition that the maker's wife sign the new note, and the wife does sign the same, and an extension is created, the defense of want of consideration for the wife's signing is precluded, since it is sufficient if the holder parted with consideration, even though the wife received none of it.''

Applying the facts shown in this record to the rules of law laid down by this court as set out in the above-cited opinions, the notes and mortgages were in default and the extension of

time of payment given by the appellee to Wilson, the principal maker, is sufficient consideration to hold Mrs. Milliron upon the waiver of priority which she signed. And the lower court erred when it held that Mrs. Milliron was entitled to a prior lien; she having agreed that her tax certificates should be junior and inferior to the lien of the mortgage, the decree should have so provided.

It therefore follows that the judgment of the lower court must be and it is hereby affirmed upon the appeal of the appellant, and reversed upon the appeal of the appellee.

Affirmed on appeal of appellant. Reversed on appeal of appellee.

DONEGAN, C. J., and ALBERT, KINTZINGER, ANDERSON, PARSONS, and STIGER, JJ., concur.