HARRY P. GALER *et al*, Appellants, v. A. A. GALER.

**Gifts:** COMPETENCY OF DONOR: *Evidence.* The donor was over 70 years of age, and his physical health was failing. His memory had failed, and he was in the habit of repeating things. Witnesses who well knew him testified that his mind and judgment were sound. Another witness testified that he had a transaction with him and he was rational and intelligent. *Held,* insufficient to establish his incompetency to make a valid gift.

**Appeal:** STRIKING AMENDMENT TO ABSTRACT. An amended abstract, containing material matter, filed by the appellee after the time required by the rules, will not be stricken.

*Appeal from Franklin District Court.*—HON. B. P. BIRDSALL, Judge.

SATURDAY, MAY 20, 1899.

ACTION for an accounting. Trial to court. Judgment for defendant, and plaintiffs appeal.—*Affirmed.*

*John M. Hemingway* and *D. W. Dow* for appellants.

*Taylor & Evans* and *E. P. Andrews* for appellee.

WATERMAN, J.—The plaintiffs are the next of kin of one Dr. J. B. Galer, who died in Franklin county on September 11, 1895. The defendant is the widow of such decedent, and the administratrix of his estate. The claim made is that Dr. Galer, during the last two or three years of his life, was mentally incompetent to transact business, and that defendant took charge of and conducted his affairs; that by fraud, and upon false pretenses, she possessed herself of his entire estate, amounting to some fifty thousand dollars in money and four thousand two hundred and ninety-three dollars and fifty-nine cents in mortgage securities, besides some real estate, for which she also secured conveyances. These

allegations are denied, and it is averred, in substance, that all the property which defendant has, and which formerly belonged to her husband, was given her by him in his lifetime. This action was begun December 15, 1895. No question is made as to the right of plaintiffs to maintain a proceeding of this character during the pendency of this administration, so we shall proceed to a consideration of the case on its merits.

Dr. Galer had a legal right to give away his property, if he saw fit to do so, and had a contracting mind at the time. Doubtless, under the facts, the burden is upon defendant to establish the gift. *Samson v. Samson,* 67 Iowa, 253. But, the gift being established, if it is sought to be avoided on account of the mental incompetency of the donor the burden of showing this fact will be upon plaintiffs. *Teegarden v. Lewis,* 145 Ind. Sup. 98 (44 N. E. Rep. 9). The defendant married decedent in the year 1872, and from that time until the latter's death they lived happily together. They were childless. The plaintiffs are collateral relatives. During the latter years of his life, Dr. Galer was afflicted with heart disease; and for two or three years just preceding his death, which occurred in his seventy-fifth year, his physical health failed steadily. It became necessary for some person to aid him in looking after his affairs, and this his wife did. As to these facts all parties agree. But plaintiffs assert that his mind failed, as well as his body, and that defendant, taking advantagee of this fact and of her position, stripped him of his entire estate without his knowledge or consent. Much evidence is introduced on the issue of Dr. Galer's mental competency. It certainly establishes that his memory had failed, but we do not think it goes further than this. Many witnesses, who knew him well, and met him at his home, at social gatherings, and in business transactions, say that his mind was sound and his judgment wholly unimpaired. A witness for plaintiffs (one Myers, a banker with whom Dr. Galer did business, and who had a personal trans-

action with him during the last year of his life) says: "I don't think I ever saw Dr. Galer, in a business transaction, when he was not naturally rational and intelligent, and knew what he was doing. He had a habit of repeating things." The repetition alluded to, relates, doubtless, to the doctor's absent-mindedness, or failure of memory; and with this suggestion, we may say that the testimony of this witness represents fairly the consensus of all the opinions given. That is, taking all the testimony together, and we think the condition of Dr. Galer is found to be as this witness states it.

As to the charge of fraud in obtaining the property, there is no evidence except what is wholly circumstantial in character. To rebut it, there is the testimony of one White, who acknowledged the assignments of mortgages and the deeds of real estate from Galer to his wife. He says that these instruments were made at the request of the grantor and were voluntarily executed by him, and that Galer told him he had given about all his property to his wife. Another witness (Taylor) says that just previous to the doctor's last sickness, the latter spoke to him of a deed of property, which he said he had made to his wife. It is true that White is defendant's brother, and Taylor is one of her counsel in this case, and that some of the circumstances of defendant's case are of a suspicious character, and impress us very unfavorably. But these circumstances are of a collateral nature. They do not bear directly upon the issue of the gift. On the other hand, Taylor and White are to some extent corroborated by plaintiffs' witness Myers, who says that during the last two years of the doctor's life (and it was during this time defendant is said to have appropriated the greater part of the estate) he visited the house to arrange for loans with Mrs. Galer; that, while he saw her mostly, he talked with the doctor once or twice about the matters. These loans must have been made, in great part, at least, from money belonging to Dr. Galer. If the money was not so invested with the doctor's full consent, it is hardly possible that he could have talked with this

witness about the matter. without learning the condition of affairs; or, if his wife was surreptitiously obtaining this money, it is not likely she would have permitted this witness to see and talk with her husband about the matter, thus affording opportunity for the exposure of her schemes. Upon the whole, we do not feel justified in allowing to the circumstances of which we have spoken such weight as would permit them to overcome this direct and positive evidence.

Another contention of plaintiffs is that Dr. Galer's indorsements upon the notes and certificates of deposit transferred, and his signature to many of the deeds and assignments of mortgage introduced, were forged by defendant. No evidence was taken on this branch of the case. We are asked to inspect these documents, which have been certified up, and determine the question from the knowledge thus acquired. This is a field of doubtful inquiry upon which we are invited to enter. We should certainly not be willing to accord to our own opinions any more than the dubious force which we have said is to be allowed the opinions of those who testify to the genuineness of handwriting. *Borland v. Walrath,* 33 Iowa, 130; *Whitaker v. Parker,* 42 Iowa, 585. We may say, however, that we have looked these exhibits over with no little care, and we are unable to form any definite opinion on this question from the inspection.

The motion to strike appellee's amended abstract because not filed within the time fixed by the rules of this court is overruled. The matter contained in it is material. See *Green v. Ronen,* 62 Iowa, 89.

The conclusion we reach renders it unnecessary for us to pass upon the numerous objections urged by appellee to the record before us. The evidence showing a gift to the wife has not been overcome by the testimony offered to establish mental incapacity on the part of the donor, and therefore the judgment of the district court is AFFIRMED.