D. FITZGERALD, as Administrator of the Estate of OLE AXNESS, deceased intestate, and ELMA MARIE WATLAND, a minor, and D. FITZGERALD, her guardian, v. OLOF TVEDT, a minor, and S. NORDSKOG, his guardian, Appellants.

**Gift of real property:** CONVEYANCE: MENTAL CAPACITY OF GRANTOR.
1 One may legally make a gift of land; and where the grantor fully comprehends the nature and extent of his estate, recollects the objects of his bounty and appreciates the nature of the transaction, he is mentally capable of making a conveyance.

**Same:** BURDEN OF PROOF. The burden of establishing the mental incapacity of a grantor is upon the party asserting the same.

**Deeds:** DELIVERY: ACCEPTANCE. A deed conveying a present interest, recorded and afterwards in the possession of the grantee, is shown to have been delivered; and where the grantee is a minor he will be presumed to have accepted the same.

*Appeal from Emmet District Court.*—HON. A. D. BAILIE, Judge.

WEDNESDAY, APRIL 7, 1909.

AN appeal from a judgment annulling and setting aside a deed executed by Ole Axness to the defendant

Olof Tvedt, conveying certain land in Emmet County.—
*Reversed.*

*Soper & Alexander,* for appellants.

*Crim & Morse,* for appellees.

SHERWIN, J.—This is an' action to set aside and
cancel a deed signed and properly acknowledged by the
grantor therein, Ole Axness, on the 6th day of Decem-
ber, 1905. The plaintiff alleged that it was procured by
undue influence, that it was without consideration, and
that at the time it was executed the grantor was without
mental capacity to make a valid deed. The trial court
found for the plaintiff without indicating upon which
ground of the petition the judgment was based, and the
appellees' case is presented to us with apparent reliance
upon the three propositions.

Ole Axness was born in Norway, and came from there
to the United States before he was of age. He bought
the land involved herein, two hundred and thirty acres,
a good many years before his death, and by hard work
and the practice of the most rigid economy he finally paid
for the land and improved and stocked it. His health
partially failing in 1902, he sold off his live stock and
rented his farm. In December, 1904, he went back to
the old home in Norway for a visit. He went to Hauges-
und, Norway, a city of some considerable size, where
through the medium of a message from a neighbor in Em-
met County to one Torkel Hanson Tvedt he became ac-
quainted with the latter and his family, and, after a short
stay at one of the leading hotels in the city, he was taken
into the Tvedt home, where he remained until his return
to Iowa in August, 1905. There were several children in
the Tvedt family. One was a son, Sophus, ten years old,
who slept with Ole Axness while he was at the home, and

another was the defendant Olof Tvedt, who was then four-teen years of age. Axness seems to have been particularly fond of this fourteen year old boy, and brought him back to Iowa with him, promising the parents that he would be a father to him. He paid the expenses of his trip and made him his companion after his return. Axness had never married, and his relatives were two half-sisters in Norway and a grand-niece in this country, Elma Marie Watland, the plaintiff herein. He had for some time been affected with pulmonary consumption, and soon after his return to Iowa he became convinced that he had not long to live, and, following an illness of several days dura-tion, he made the deed in question, conveying his land to Olof Tvedt. The deed was drawn by the cashier of the bank where Mr. Axness had for many years done most of his business, and it was recorded at the instance of. the grantor, and was finally delivered to the grantee named therein. There is no pretense that any consideration was paid for the conveyance.

It was a gift pure and simple; but no one will ser-iously contend that such a gift may not be made. *Galer v. Galer,* 108 Iowa, 496; *Reeves v. Howard,* 118 Iowa, 121. There is absolutely no evidence in the record tending even to show undue influence, and we may dismiss the subject without further comment. The evidence relied up-on to support the proposition that Axness was mentally incapable of making a valid conveyance at the time the deed was executed is not much stronger than that relied upon to support the claim of undue influence. No wit-ness who testified in the case intimated that Axness was incapable of intelligently transacting his business affairs, or that there was anything in his conduct or talk indi-cating that he did not at the time of executing the deed fully and intelligently understand the nature of the busi-ness he was engaged in, or the nature and extent of his

1. GIFT OF REAL
PROPERTY:
conveyance:
mental
capacity
of grantor.

property.   On the other hand, the record is crowded full
of evidence showing that Axness was in the full posses-
sion of his mental faculties, not only at the time the deed
was made, but until his death.   No useful purpose can
be served by giving the evidence in detail.   The rule of
law is that when a grantor or testator understands fully
and intelligently the nature and extent of his estate and
the nature of the business he is engaged in when making
a will or deed and recollects the objects of his bounty,
he is capable of making a will or conveyance.   *Perkins
v. Perkins,* 116 Iowa, 253; *In re Evans' Estate,* 114
Iowa, 240; *Meeker v. Meeker,* 74 Iowa, 352.

The burden was on the appellees to prove mental in-
capacity, and they have signally failed to do so.   One
Dr. McDade of Minnesota testified that he had treated
Axness in 1901 for "pleurisy and probable

**2. Same:
burden of
proof.**
effusion and lung complications," and that
he next saw him in March, 1906, when he
was called to treat him for erysipelas of the face and to
make an examination of his lungs.   This doctor was then
asked if he then found Axness "suffering from any par-
ticular ailment," and he answered:   *"Senile dementia* is
what I diagnosed the case."   He further testified that
Axness was thus affected in 1901 when he treated him for
pleurisy and lung trouble.   However correct the doctor's
diagnosis of his other ailments may have been, we are
thoroughly convinced that Axness was not affected with
*senile dementia* either in 1901 or in 1906.

The question of the delivery of the deed seems not
to have been raised in the court below and hence can not
now be properly considered.   We may say, however, that
we have no doubt as to the delivery.   Com-

**3. Deeds:
delivery:
acceptance.**
petent testimony shows that such was the
intent of Axness.   The deed conveyed a
present estate, and it was recorded and afterwards actual-
ly in the possession of the grantee.   The facts are

sufficient to establish delivery. *Luckhart v. Luckhart,* 120 Iowa, 248. A minor is presumed to have accepted conveyance. *Davis v. Davis,* 92 Iowa, 147.

The judgment must be reversed, and the case remanded for a decree. in harmony with this opinion, or the appellants may have a decree here if they so elect.—*Reversed.*