McGregor Subdivision Company, Appellee, v. Jennie C. Mabie, Appellee, et al., Appellants.

FRAUDS, STATUTE OF: Debt or Default of Another—Primary Liability. An oral promise by a person, on sufficient consideration, to pay the debt of another, is not within the statute of frauds.

CONTRACTS: Construction—Benefit of Third Persons. Principle reaffirmed that a party may enforce an agreement which, unknown to him at the time, was entered into by others on adequate consideration and for his benefit.

*Appeal from Story District Court.*—H. E. Fry, Judge.

December 15, 1922.

Action commenced at law, to recover from defendant Jennie C. Mabie past-due installments under a written contract of purchase of three lots in the city of Ames, Iowa. Defendant Mabie filed a cross-petition against defendants Lynch & Ash, alleging that Lynch & Ash had taken an assignment from her of the contract, and assumed her liabilities under the contract. Thereupon, plaintiff amended its petition, demanding judgment against Lynch & Ash, as well as against the original defendant, Jennie C. Mabie. By agreement of all parties, the case was transferred to equity. Judgment was entered in favor of plaintiff against both Jennie C. Mabie and Lynch & Ash, decreeing that Lynch & Ash were primarily liable. Facts appear in the opinion.—*Affirmed.*

*John Y. Luke,* for appellants.

*R. E. Nichol* and *Lee & Garfield,* for appellees.

Arthur, J.—I. On October 23, 1915, plaintiff and defendant Jennie C. Mabie entered into a contract by which Mabie purchased Lots 4, 5, and 6 in Block 6 of Lincoln Place Addition

1. FRAUDS, STATUTE OF: debt or default of another: primary liability. to the city of Ames for $1,600, payable in monthly installments. On June 20, 1916, Jennie C. Mabie and Lynch & Ash entered into a contract whereby Jennie C. Mabie purchased a quarter section of land situated in Pawnee County, Nebraska, at the agreed price of $18,600. As part of the purchase price of the Pawnee County land, Jennie C. Mabie transferred by deed a certain tract of land in Story County, Iowa, at the agreed price of $10,000, assuming a mortgage incumbrance resting thereon of $6,000, and also agreed to execute additional mortgages on the Nebraska land in the amount of $5,300. As a further payment on the Nebraska land, Mabie agreed to and did assign to Lynch & Ash her contract of purchase of said Lots 4, 5, and 6 in Block 6 of Lincoln Place Addition to Ames, at an agreed price of $300.

The court found that, "while defendants Lynch & Ash refused to accept in writing the assignment of the contract [the contract made by Mabie with plaintiffs for the purchase of the three lots in Ames], the said firm did orally agree to make the payments required by the contract." The court also found that, by reason of their contract with Jennie C. Mabie, whereby they sold to her the Pawnee County land and agreed to receive an assignment from her of her contract with plaintiff of purchase of the lots in Ames, and the assignment by her to them, and their payment of installments on the contract after receiving such assignment, and by reason of the fact, which the court found, that "the said firm did orally agree to make the payments required by the contract," defendants Lynch & Ash "became liable on said contract for the deferred payments thereon, and for taxes on said property, and are legally bound to perform said contract." Judgment was entered against both the defendants, Jennie C. Mabie and Lynch & Ash, for the delinquent payments on the contract and accrued interest thereon, and for taxes that had been paid by plaintiff, which amounts aggregated $796.30, up to November 1, 1920. It was further provided in the decree entered that the liability of Lynch & Ash was primary, and that, in the event that Jennie C. Mabie paid such judgment, or any part thereof, she should, upon paying same, be entitled to judgment against Lynch & Ash for the amount by which she should reduce the judgment by such pay-

ments. From the decree and judgment entered, Lynch & Ash prosecute this appeal.

The main issue in the trial was, and on this appeal is, whether Lynch & Ash are personally liable to plaintiff for the payments due under the contract of purchase made between plaintiffs and Jennie C. Mabie for the lots in Ames, afterwards assigned by Mabie to Lynch & Ash.

II. In June, 1916, Jennie C. Mabie and Lynch & Ash entered into the exchange contract by the terms of which Jennie C. Mabie purchased from Lynch & Ash the quarter section of Nebraska land at the agreed price of $18,600, to be paid by the transfer by Jennie C. Mabie of a lot in Ames at the agreed price of $10,000, against which there was a mortgage of $3,000, leaving a margin of $7,000; by assigning the contract in suit at an agreed price of $300; by assuming a $6,000 mortgage on the Nebraska land; and by executing an additional mortgage of $5,300 thereon. The Ames properties, together with the two mortgages, amounted to $18,600. On July 1, 1916, Jennie C. Mabie, by indorsement in writing on the contract in suit, agreed as follows:

"For value received, I hereby assign and transfer to Lynch & Ash, Ames, Iowa, all my right, title, and interest in and to the foregoing contract.

[Signed] "Jennie C. Mabie."

The contract of exchange above referred to does not provide that Lynch & Ash assumed and agreed to pay out on the contract in suit; neither does it provide that Jennie C. Mabie was to make any further payments on the contract in suit after the same was assigned to Lynch & Ash. It is manifest that, if Mabie, as between her and Lynch & Ash, was required to make further payments on the contract after the assignment, she would be giving Lynch & Ash more than her agreed equity in the lots mentioned in the contract. She would, in that event, be paying more than $18,600 for the Nebraska land.

Jennie C. Mabie testified:

"I told Mr. Lynch I wasn't willing to sell for what I had in it. I wanted $300 clear, and accordingly the $300 consideration was placed in the contract of exchange. They [Lynch &

Ash] were to accept the contract on the Lincoln Place Lots 4, 5, and 6 in Block 6 in the McGregor Subdivision, and none of these properties were to be exchanged or should have possession until March 1, 1917. They also agreed to keep up the payments on these lots from the 1st of July. This agreement was made about the 20th of June, I think. I told them I could not sell the lots on that basis and keep up the payments in the future for seven years and eight months at $15 a month, and they agreed to do that, or furnish the money for it; and in November, Mr. Lynch gave me the money to make the payment in November. The conversation in regard to it [on June 20, 1916] was that they agreed to carry out this contract [the contract in suit]. I told Mr. Lynch I was paying for these lots in installments, at $15 a month. I asked him if he would take care of them after the 1st of July. He said he would. I couldn't afford to sell them for $300 and keep the payments up. I considered that I was through with it, and that he [Lynch] was to take care of it from that time on, as he said he would. After July 1, 1916, I received notice from Mr. McGregor that payments were due. I told Mr. Lynch about it, and he said he would look after it. Later, I called up Mr. Lynch, and told him I had got another notice from McGregor, and that there were several payments that must be looked after. He made an appointment to see me. When I saw Mr. Lynch, he wrote me a check for something like $75, and told me to pay it.''

She further testified that it was her understanding that Lynch & Ash would complete the balance of the payments; that Lynch afterwards told her that he would make the payments. Her version of the agreement is corroborated by the testimony of her husband, S. L. Mabie, who testified that Lynch & Ash were to assume the incumbrance on and pay out on the Lincoln Place lots; ''that they were to take those [the Lincoln Place lots] at $300, and assume our contract, and to finish making the payments due on the contract.''

A. W. McGregor, one of the partners of plaintiff firm, testified:

''I had a conversation with Lynch & Ash in regard to making these payments in the winter of 1916 and 1917. I talked with both Lynch and Ash. As I recall, Mrs. Mabie had informed

us that she was selling her lots to Lynch & Ash; and when I mentioned the assignment to Lynch & Ash, or the question came up about the assignment of the contract, Mr. Lynch told me they were to keep up the payments on the contract. On February 21, 1917, Mr. Lynch said he would keep up the payments on the contract, and he made several payments after that.''

McGregor further testified that Lynch told him that he would keep up the payments on the contract until such time as they could dispose of the lots to someone who would be agreeable to the company to take the assignment.

It is true that McGregor testified that afterwards Lynch denied that he told them that his firm would make all payments on the contract. However, this denial was made about January 10, 1918, more than 18 months after the payments that had been made under the contract were made either by Lynch & Ash or with money furnished by them. It appears that, with the exception of this one time in January, 1918, Lynch & Ash always made payments under the contract.

After Lynch & Ash had received assignment of the contract in suit, they advertised the property for sale, and otherwise endeavored to sell it. There is direct conflict in the testimony of the Mabies and Lynch & Ash as to the agreement claimed by the Mabies that Lynch & Ash agreed to assume and pay the deferred installments on the contract in suit. Both Lynch and Ash positively deny that any such agreement was made. We think that the circumstances strongly corroborate the contention of Mabie. After a careful examination of the evidence, we conclude, as did the court below, that Lynch & Ash orally agreed to make the payments required by the contract in suit, for an adequate consideration, in part, on the part of Jennie C. Mabie, to enter into the contract of exchange. As will be seen, it is sought to hold Lynch & Ash liable on their oral agreement and promise to pay out the contract in suit. There was no assumption in writing. No assumption was contained in the written contract of exchange between Mabie and Lynch & Ash. In her cross-petition, Mabie sought to have the contract of exchange reformed so as to contain an assumption to pay out on the contract in suit. The court below did not

specifically deny such relief, but did not grant it. It is the position of appellants, Lynch & Ash, that, reformation not having been granted, leaving the contract standing as it was originally written, oral testimony to vary, change, or add to it was incompetent and inadmissible; and that, because the specific sum of $300 was named in the contract as the consideration which Lynch & Ash were to pay for the equity in the contract in suit, oral evidence of a different and greater consideration was incompetent and inadmissible; that the oral agreement claimed is within the statute of frauds. Of course, the debt under the contract was originally the debt of Jennie C. Mabie, and not of Lynch & Ash. But we have found, as did the court below, that Lynch & Ash orally agreed with Jennie C. Mabie to pay the remaining installments under the contract, as a part of the consideration and inducement moving from Lynch & Ash to Jennie C. Mabie for her entering into the contract of exchange. By this oral contract, Lynch & Ash, for valuable consideration, made the debt of Jennie C. Mabie their own, which takes it without the statute of frauds. *Senninger v. Rowley,* 138 Iowa 617; *Williams Shoe Co. v. Gotzian & Co.,* 130 Iowa 710; *Pratt v. Fishwild,* 121 Iowa 642.

The agreement or promise of Lynch & Ash, assignees of the contract sued on, to pay the remaining installments of the contract, although made between them and Jennie C. Mabie only, was an agreement to make the debt which was originally Jennie C. Mabie's, their own; and it may operate for the benefit of plaintiff, and be enforced by plaintiff, the vendor in the contract. *Duntz v. Ames Cemetery Assn.,* 192 Iowa 1341; *Wightman v. Spofford,* 56 Iowa 145; *Senninger v. Rowley,* supra.

2. CONTRACTS: construction: benefit of third persons.

The findings of fact of the court below have ample support in the evidence, and the judgment is warranted by law and equity, and is affirmed.—*Affirmed.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.