**COUNTY OF WORTH, Appellee,**

v.

**Vince JORGENSON, Appellant.**

No. 2–58085.

Supreme Court of Iowa.

May 25, 1977.

Rehearing Denied June 27, 1977.

Pappas, McGuire & Folkers, Mason City, for appellant.

Phillip N. Norland, Northwood, for appellee.

Submitted to MOORE, C. J., and Le-GRAND, UHLENHOPP, REYNOLDSON and HARRIS, JJ.

UHLENHOPP, Justice.

We have here to decide by de novo review whether the grantor in a deed established as a factual matter the acceptance of the deed by the grantee. *Wetzstein v. Dehrkoop,* 241 Iowa 1237, 44 N.W.2d 695; *Frederick v. Shorman,* 259 Iowa 1050, 147 N.W.2d 478. The grantor argues several reasons for sustaining the trial court's decree upholding the conveyance, but we are satisfied from examination of the record that the grantor predicated its case on its deed to the grantee and that the crux of the case is whether the grantee accepted the deed. The case has the unusual twist that both parties are trying to get rid of the property involved. We give weight to the trial court's findings but make our own independent review of the evidence. Rule 344(f)(7), Rules of Civil Procedure. After examining the evidence, we find the facts to be as follows.

In 1967 defendant Vince Jorgenson owned real estate described as Lot 12, Block 13, Original Town of Manly, Worth County, Iowa, on which stood a very badly run-down building. Taxes on the property were unpaid. The American Legion post at Manly manifested interest in the property to the extent of appointing a committee to look into acquisition of it, but nothing came of this. A former post commander testified, "It was almost hopeless to try to fix it up with the finances we had."

In December 1967 Jorgenson appeared before the Worth County Board of Supervisors. The record does not show exactly when this meeting occurred with respect to the Legion's action or nonaction. The members of the county board testified:

Q. What do you remember concerning the statements made to the board by Mr. Jorgenson? A. [Member Harmon] If we would take a quit claim deed, that the American Legion was interested in the building, so to get it back on the tax rolls. That's what we decided to do. But apparently the Legion wasn't interested in it. . . .

Q. Now Mr. Jorgenson at no time in your presence ever told you that the Legion would buy this property, did he? A. He said the Legion was interested in it.

Q. All he said they were interested in it but he never told you they would buy it? A. I can't recall that.

Member Bartz testified:

Q. And state what he said to the board as best you remember it. A. Well, if they would take it off our hands. If we could take a quit claim deed to it.

Q. When you say they, you mean? A. The American Legion.

The other member, Mr. Buechele, testified:

Q. And what did he state to the board at the time of his visit? A. Well, we had, he had this building he said he wanted, would like—here is what he said: he said, I think—to get rid of this building, he wanted to get rid of this building. He wanted the county to take it over for taxes. Then he also told us that the Legion was interested in this building.

. . .

Q. Did you at a later time talk to people who were involved with the Legion post at Manly? A. I talked to several Legion people at the time and they said they wasn't interested.

In accordance with Jorgenson's request at the December 1967 meeting, the board accepted his conveyance of the property to the county.

When the board later learned that the Legion post was not interested, it decided to try to undo its transaction with Jorgenson. It did not, however, negotiate with him or bring a suit to cancel his deed to the county. See 26 C.J.S. Deeds § 178 at 1188; 13 Am.Jur.2d Cancellation of Instruments § 18 at 511, § 33 at 524. Instead, on April 18, 1968, it adopted a resolution reciting that Jorgenson represented to it the Legion post expressed a desire to have the property but that Legion post members informed the board they never expressed such desire. The board therefore resolved to execute a quit claim deed of the property to Jorgenson. Accordingly, the same day the county through the board chairman executed such a deed and filed it with the county recorder for record. The recorder recorded the deed but did not testify as to what happened to the deed itself. At trial, the county introduced in evidence as Exhibit D a recorder's certified copy of the record of the deed. Jorgenson testified:

Q. Now I am going to hand you what has been marked Exhibit D and tell you that that is a certified copy of a quit claim deed. Did you ever receive the original of that document? A. I have not.

Q. Have you ever seen such a document? A. No, I haven't. . . .

Q. Have you ever been aware that Exhibit C [see *infra*] or D were even in existence? A. No. Someone mentioned it to me, I think it was the Globe Gazette [Mason City newspaper], called one time about some information about it. They mentioned something about a deed was sent back to me.

Q. You never received it, however? A. No, I have not.

On April 22, 1968, the Worth County Attorney mailed a letter to Jorgenson stating that Jorgenson's representations regarding the Legion's interest in the property were false and concluding, "As a result the county has signed and recorded a quit claim deed returning this property to you for such use as you may make of it." The county introduced in evidence a carbon copy of this letter as Exhibit C. Jorgenson testified:

Q. And Exhibit C, have you ever seen such a document as Exhibit C, the letter, before? A. No, I haven't.

The letter was addressed to 205 South Tennessee Place, Mason City, Iowa, which was Jorgenson's residence. He received all his mail, however, at his post office box, number 914. He testified:

Q. I am talking about not whether you got mail at the house, but did you receive mail in your box that was in fact addressed to 205 South Tennessee Place? A. I have occasionally different types of mail but I never received anything like this.

On the other hand, the original letter of which Exhibit C was a copy never came back to the sender.

After stating on direct examination his version of the facts, Jorgenson concluded his testimony:

Q. Did you ever accept delivery of any such deed as Exhibit D? A. No.

The building on the lot constitutes a danger to the public. Manly desires to condemn it, but does not know who the owner

is. The county commenced the instant suit for a declaration that Jorgenson owns the property. After trial, the court so found. Jorgenson appealed. Consistent with its prior conduct, the county tried the case on the theory that the county accepted Jorgenson's deed but subsequently conveyed the property back to him, and we therefore decide the appeal on the basis of that issue.

I. The determinative question here is factual: whether Jorgenson actually accepted the deed from the county. The legal principles are well understood and are stated in our decisions. *Hall v. Cardell,* 111 Iowa 206, 82 N.W. 503; *White v. Watts,* 118 Iowa 549, 92 N.W. 660; *Fitzgerald v. Tvedt,* 142 Iowa 40, 120 N.W. 465; *Burch v. Nicholson,* 157 Iowa 502, 137 N.W. 1066; *Kyle v. Kyle,* 175 Iowa 734, 157 N.W. 248; *Bartemeier v. Central National Fire Ins. Co.,* 180 Iowa 354, 160 N.W. 24; *Johnson v. Moore,* 184 Iowa 648, 169 N.W. 47; *Hayes Pump & Planter Co. v. Sears,* 185 Iowa 589, 171 N.W. 24; *Gibson v. Gibson,* 205 Iowa 1285, 217 N.W. 852; *Huxley v. Liess,* 226 Iowa 819, 285 N.W. 216; *In re Bright's Estate,* 215 N.W.2d 253 (Iowa). See also Anno. 74 A.L.R.2d 992; 23 Am.Jur.2d Deeds §§ 127–135 at 176–183; 26 C.J.S. Deeds § 51 at 708–713, 26A C.J.S. Deeds § 186–187 at 22–28, § 205 at 85–86.

■ Under our decisions, to be effective a deed must be both delivered and accepted. "The law is clear that a delivery which is itself an integral element of execution of a deed is not sufficient to complete the execution. It constitutes the action of the grantor. The contractual concept of transfer of title requires a companion action of the grantee in the form of an acceptance. The delivery compares to the offer and the acceptance completes the contract. An acceptance, therefore, of the deed is requisite to execution as completing the transfer of title to real estate." 8 Thompson, Real Property, § 4251 at 164 (1963 replace. vol.).

■ From the executing, acknowledging, and recording, we find that the deed from the county was *delivered* so far as the county's part of the transaction was concerned. But was it *accepted* so far as Jorgenson's part was concerned? A grantor cannot unilaterally force title upon a grantee or, as has been stated, an estate cannot be thrust upon a person against his will. *Hibberd v. Smith,* 67 Cal. 547, 4 P. 473, aff'd 67 Cal. 547, 8 P. 46.

■ Acceptance consists of two elements: some *conduct* by or on behalf of the grantee and an *intent* to accept the grant. Anno. 74 A.L.R.2d 992, 996 ("an intention to take the legal title to the property which the deed purports to convey, and the manifestation of such intention by some act, conduct, or declaration"). The record here is bereft of evidence of such conduct or intent on the part of Jorgenson or anyone authorized to act for him, or of circumstances raising an inference of fact of acceptance. Assuming arguendo that the county attorney's 1968 letter reached Jorgenson, nothing indicates Jorgenson assented to the conveyance to him.

■ II. The county relies on the doctrine of implied acceptance. Under certain circumstances, the law presumes acceptance even when the grantee is unaware of the grant. Such is the case where the grant is beneficial to the grantee and not onerous; *White v. Watts,* 118 Iowa 549, 92 N.W. 660; *Huxley v. Liess,* 226 Iowa 819, 285 N.W. 216, or where the grantee is an infant; *Hall v. Cardell,* 111 Iowa 206, 82 N.W. 503; *Fitzgerald v. Tvedt,* 142 Iowa 40, 120 N.W. 465, or of unsound mind; *Burch v. Nicholson,* 157 Iowa 502, 137 N.W. 1066.

■ We need not tarry to inquire whether the presumption in such instances is rebuttable or is of the so-called conclusive variety, for the facts of this case do not bring it within the implied acceptance cases. Jorgenson is not an infant or of unsound mind, and the county's attempted grant was not beneficial to him. Manifestly the property is a white elephant, and someone will have the considerable burden of razing or reconstructing the building. 8 Thompson, Real Property, § 4252 at 176 (1963 replace. vol.) ("where the conveyance is in any way prejudicial or burdensome to the grantee, assent thereto will not be presumed").

To be effective, the county's deed had to be accepted in fact by Jorgenson, but acceptance does not appear. The county remained the owner of the property.

REVERSED.