Thomas J. BRIDGMAN and Ann L. Bridgman, Husband and Wife, Appellants,

v.

John W. CURRY and Edna T. Curry, Husband and Wife, Defendants,

Dan D. Stevens and Marjorie A. Stevens, Husband and Wife, Donald E. Fike and Marie T. Fike, Husband and Wife, Richard A. Greene and Dale Greene, Husband and Wife; Michael Bibo and Patricia Bibo, Husband and Wife, Appellees,

and

First National Bank, Burlington, Iowa, Big Three Farm Bureau Service Co., and Kaiser Agricultural Chemicals, Defendants.

No. 85–1730.

Supreme Court of Iowa.

Oct. 15, 1986.

Rehearing Denied Dec. 15, 1986.

D.W. Harris, Bloomfield, and Emil Trott, Jr. of Barrett & Trott, Des Moines, for appellants.

Stephen A. Richardson and Vern M. Ball, Bloomfield, for appellees Stevens, Fike, Greene and Bibo.

Considered by REYNOLDSON, C.J., and McGIVERIN, LARSON, SCHULTZ and WOLLE, JJ.

WOLLE, Justice.

The plaintiffs Thomas and Ann Bridgman challenge the post-trial dismissal of their petition for foreclosure of a real estate contract. Because we find that the evidence and applicable law fully warranted entry of a decree of foreclosure, not dismissal of the plaintiffs' action, we reverse the decision of the trial court and remand the case with directions.

We review de novo this foreclosure proceeding which was filed and tried in equity. *Bair v. Estate of Biggins*, 356 N.W.2d 551, 556 (Iowa 1984); Iowa Code § 624.4 (1985); Iowa R.App.P. 14(f)(7).

In 1981 plaintiffs sold their Davis County farm on contract to defendants John W. and Edna Curry (collectively referred to as Currys). The contract obligated Currys to make payments to the plaintiffs on March 1 of each year and provided for forfeiture or foreclosure in the event they did not. Currys, in March of 1982, entered into a written "joint venture contract" assigning four undivided one-sixth interests in the Bridgman-Curry real estate contract to defendants Dan Stevens (Stevens), Donald Fike (Fike), Michael Bibo (Bibo), and Richard Greene (Greene). (Those four defendants will be collectively referred to as the assignee defendants.) Currys retained the other two undivided one-sixth interests. The joint venture contract stated that the assignee defendants agreed "to be bound by the terms of the Bridgman contract." The assignee defendants also executed an acceptance of assignment providing:

The undersigned Assignees herewith accept the foregoing Assignment, and agree to be bound by the terms and conditions of [the Bridgman] Real Estate Contract including the payment of principal, interest and Real Estate Taxes.

The joint venture contract contained other explicit provisions pertinent to the issue in this appeal. The property would be managed "under John W. Curry's sole di-

rection." The parties would make additional capital contributions in accordance with their respective interests, having their interest increased or reduced to the extent any joint venturer did not provide such capital. Profits and losses would be allocated on the basis of the parties' respective percentage interests. Persons wishing to dispose of their joint venture interest were required first to offer it to the remaining parties on a pro-rata basis.

As early as February of 1983, the plaintiffs were made aware of the assignee defendants' interest in the real estate contract when a payment due then under the contract was paid with a check drawn on a bank account entitled "Curry-Stevens-Fike-Greene-Bibo." In April of 1984 the plaintiffs allowed Curry and the other investors additional time to pay amounts due under the contract, accepting Curry's statement, "We'll get you the money." No further payments were made.

On November 16, 1984 the plaintiffs commenced this foreclosure action rather than undertaking to serve notice of forfeiture of the installment contract, another option the contract gave the plaintiffs. The assignee defendants all denied pertinent allegations of the foreclosure petition, and defendants Stevens, Fike and Greene affirmatively alleged that they had earlier reconveyed their interests to Curry by quitclaim deed.

On February 6, 1985, Currys filed a voluntary petition for reorganization under chapter 11 of the United States Code (1982) in the United States Bankruptcy Court for the Central District of Illinois. The filing of that petition operated as an automatic stay of the plaintiffs' foreclosure proceedings. See 11 U.S.C. § 362(a) (1982). Plaintiffs then applied for and, with the Currys' concurrence, received an order of the bankruptcy court entered March 21, 1985 lifting the stay upon condition that "[p]laintiffs waive all claims against [Currys] for any deficiency arising from plaintiffs' proposed forfeiture of the real estate contract and/or the receivership now pending in the Iowa state court or for any other reason."

An additional key provision of that March 21, 1985 order unequivocally stated:

Nothing herein shall be deemed to affect the rights of the plaintiffs, if any, against third parties.

Ultimately, the bankruptcy court confirmed, subject to specific exceptions, an amended plan of reorganization submitted by Currys. One of the exceptions, an amendment to the plan initially proposed by Currys, provided:

The class S6 claim of Thomas and Ann Bridgman is governed by the order entered March 21, 1985.

This exception incorporated by reference the plaintiffs' reservation of rights against third parties. Plaintiffs here contend that amendment to the plan left them free to proceed with the foreclosure action and obtain deficiency judgments against the assignee defendants. Neither the plaintiffs nor the assignee defendants thereafter filed objections to the amended reorganization plan which the bankruptcy court approved.

At the commencement of trial of the foreclosure action in the Iowa district court defaults were entered against the lienholder defendants First National Bank of Burlington, Kaiser Agricultural Chemicals, and Big Three Farm Bureau Service, Co. Near the close of trial Currys tendered to the plaintiffs and offered in evidence over the plaintiffs' objection a quitclaim deed to the farm. Currys believed this tender was required by the plan of reorganization under which they had quitclaimed to other secured parties other properties governed by the reorganization plan. Plaintiffs contend they did not accept the deed and nothing in the record suggests they did.

The trial court then entered its findings of fact and conclusions of law through which it dismissed the foreclosure action on several theories which the assignee defendants as appellees attempt to uphold in this appeal. The trial court held that the plaintiffs were not intended beneficiaries of the joint venture contract and therefore could not obtain judgment against the assignee defendants on a third party beneficiary the-

ory. The trial court also decided that when the bankruptcy court approved the Curry reorganization plan "plaintiffs became incapable of maintaining this suit in foreclosure." The court explained that the plaintiffs had failed to object to the proposed reorganization plan, and thereafter "the bankruptcy court preempted plaintiffs' ability to exercise [a foreclosure] option." The trial court did not mention in its written decision the above-quoted language of the bankruptcy court's orders expressly reserving the plaintiffs' rights "against third parties." The trial court instead treated the plaintiffs' farm like the approximately thirty-nine other farms affected by the reorganization and wrote:

[T]he bankruptcy court ordered that plaintiffs get their farm returned, free of Currys' interest and free of any of Currys' junior lienholders, "in lieu of" plaintiffs' rights of foreclosure.

The assignee defendants were treated as junior lienholders whose rights were cut off when Currys during trial delivered to the plaintiffs a quitclaim deed to the farm. The trial court also determined it would be inequitable to allow the plaintiffs to foreclose the contract against the assignee defendants when the plaintiffs already had regained the farm while the defendants "had lost their down payment and contract payments."

The plaintiffs challenge each of the trial court's conclusions. They urge us to hold they are entitled to an in rem foreclosure decree and also a personal judgment against the assignee defendants for the amounts they owe as a result of their acceptance of the obligations under the Bridgman-Curry contract. The assignee defendants respond: (1) the plaintiffs have no right to recover as third party beneficiaries of the joint venture contract and assignment; (2) the bankruptcy plan of reorganization preempted the plaintiffs' rights to proceed with foreclosure; (3) defendants Stevens, Fike and Greene reconveyed their interests to Currys and thereby extinguished their obligations to plaintiffs under the assignments; and (4) the trial court properly dismissed the foreclosure action based on its finding that a balancing of the equities clearly favored the assignee defendants. We address in turn each of those four issues.

I. *Plaintiffs' Rights As Third Party Beneficiaries.*

From the inception of this foreclosure action the plaintiffs have contended that they are third party beneficiaries of the joint venture contract and acceptance agreement under which the assignee defendants Stevens, Fike, Greene, and Bibo agreed to be bound by the terms and conditions of the plaintiffs' contract with Currys. The assignee defendants responded, and the trial court found, that the assignments "were not entered into for plaintiffs' benefit." The trial court held that the plaintiffs were "gratuitous beneficiaries of such assignments" who had no right to enforce the assignee defendants' promises to perform the Bridgman-Curry contract. We disagree.

The decisive factor in determining whether a party may bring an action to enforce a contract between other parties is the intent of the contracting parties themselves. We recently emphasized the importance of the intent of the contracting parties, particularly the promisee, in *Khabbaz v. Swartz*, 319 N.W.2d 279 (Iowa 1982), where we stated:

In order to enforce a contract, the third party beneficiary must show that the contract was made for his express benefit. *Olney [v. Hutt*, 251 Iowa 1379, 1384–85, 105 N.W.2d 515, 519 (1960)]; 2 S. Williston, *A Treatise on the Law of Contracts*, § 356A at 836 (Jaeger ed. 1959) (" 'the authorities are in accord that one suing as a third party beneficiary has the burden of showing that the provision was for his direct benefit' and unless he can sustain this burden, he will not be permitted to sue on the agreement."). "The real test is said to be whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts." *Bailey v. Iowa Beef Processors, Inc.*, 213 N.W.2d 642, 645 (Iowa

1973), *cert. denied,* 419 U.S. 830, 95 S.Ct. 52, 42 L.Ed.2d 55 (1974).

*Id.* at 285. This test for determining when third party beneficiaries may enforce contracts between other parties is consistent with the test of the Restatement (Second) of Contracts (1981), which in section 302 provides:

Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Section 304 then provides:

A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty.

■ Under the test in *Khabbaz,* as well as the Restatement black-letter rules, the plaintiffs in this case are intended beneficiaries who have the right to enforce the promises the assignee defendants made to the Currys. Their joint venture contract, as well as their acceptance of the assignment, specifically provided that the assignees were to be bound by the terms of "the Bridgman contract." Currys obviously intended that the assignee defendants, as joint venturers with Currys, would be obligated to share with them the burden of paying amounts due under the Bridgman-Curry contract. They thereby intended that plaintiffs be benefited to that extent. Our cases firmly establish that intended beneficiaries, like the plaintiffs here, may enforce an agreement between promisees like the Currys and promisors like the assignee defendants who have agreed to make the promisees' debt their own. *See McGregor Subdivision Co. v. Mabie,* 194 Iowa 1259, 1264, 191 N.W. 117, 119 (1922);

*Duntz v. Ames Cemetery Association,* 192 Iowa 1341, 1345, 186 N.W. 443, 445 (1922).

■ We recognize that a promisor may have defenses against a third party beneficiary's claim based on unenforceability of the contract at its formation or because of such infirmities as present or prospective failure of performance. *See* Restatement (Second) of Contracts § 309 (1981). The assignee defendants have raised no such defense here.

The trial court erred in concluding that the contract between the assignee defendants and Currys was not entered into for plaintiffs' benefit and could not be enforced by them.

II. *Effect of the Bankruptcy Proceedings.*

The assignee defendants also contended, and the trial court held, that when the bankruptcy court by its orders and approved plan of reorganization excised the plaintiffs' right to obtain a deficiency judgment against the Currys, any rights the plaintiffs had against the assignee defendants were likewise cut off. The circumstances of this case, however, do not support that conclusion.

■ First, by the terms of the bankruptcy court's orders the plaintiffs reserved their rights to enforce the assignments against the assignee defendants as "third parties," and the only rights plaintiffs waived were "claims against [Currys] for any deficiency arising from plaintiffs' proposed forfeiture of the real estate contract," the prerequisite for lifting the stay of the foreclosure proceedings. There is no merit to the defendants' contention that the assignee defendants were "junior lienholders" with interests that the bankruptcy court intended to protect. Lienholders are, by definition, persons who hold "a charge upon property for the payment of a specific obligation." *Federal Land Bank of Omaha v. Boese,* 373 N.W.2d 118, 120 (Iowa 1985). Nothing in this record suggests that the assignee defendants held such a charge upon the property, or purchased

their individual one-sixth interests in the farm for security purposes.

Confirmed reorganization plans do bind

the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in, the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

11 U.S.C. § 1141(a) (Supp. III 1982). An "equity security holder" is defined as a "holder of an equity security of the debtor." *See* 11 U.S.C. § 101(16) (1982); the term "equity security" means

(A) share in a corporation, whether or not transferable or denominated "stock", or similar security;

(B) interest of a limited partner in a limited partnership; or

(C) warrant or right, other than a right to convert, to purchase, sell, or subscribe to a share, security or interest of a kind specified in subparagraph (A) or (B) of this paragraph....

11 U.S.C. § 101(15) (1982).

The assignee defendants' interest in the farm, arising from the joint venture contract and the Currys' assignment, was not that type of equity security nor an interest which the Curry reorganization plan was designed to protect. The trial court's contrary determination cannot be squared with the specific language of the bankruptcy court's orders which allowed the plaintiffs to proceed against the assignee defendants in the state court foreclosure proceedings.

◼ We conclude that the bankruptcy court proceedings were not designed or concluded with the intent of affecting adversely the plaintiffs' rights against the assignee defendants.

III. *The Effect of the Stevens, Fike, and Greene Reconveyances to Currys.*

◼ The assignee defendants Stevens, Fike, and Greene attempted to reconvey to Currys by quitclaim deeds their indivisible one-sixth interests in the farm after they obtained an extension of time for making the 1984 contract payments, but before the foreclosure action was commenced by the plaintiffs. They contend that their reconveyances discharged any duty they otherwise owed to the plaintiffs as third party beneficiaries under the joint venture contract and acceptance of assignment.

The parties have briefed at considerable length the question whether Illinois or Iowa law applies to this attempted modification of the assignee defendants' obligations to the plaintiffs as third party beneficiaries. We need not resolve that conflict of law issue. Assuming without deciding that Iowa law applies, as the assignee defendants contend, we conclude that their obligations to perform the Bridgman-Curry contract were not discharged by their reconveyances. Iowa cases allow promisors to modify or terminate their obligations to third party beneficiaries only if the contract is modified or terminated before the beneficiary "has acquired rights in it." *Iowa Home Mutual Casualty Co. v. Farmers Mutual Hail Insurance Co.,* 247 Iowa 183, 188, 73 N.W.2d 22, 25 (1955); *see Winchester v. Sipp,* 252 Iowa 156, 161, 106 N.W.2d 55, 58 (1960). This principle is consistent with the black-letter rule of the Restatement (Second) of Contracts, section 311 (1981), which provides that "the promisor and promisee retain power to discharge or modify the duty by subsequent agreement" unless and until the beneficiary, without notice of the discharge or modification, "materially changes his position in justifiable reliance on the promise or brings suit on it or manifests assent to it at the request of the promisor or the promisee." *Id.* at § 311(2), (3). This Restatement rule has been adopted by a majority of jurisdictions, and we consider it sound. *See* 17 Am.Jur.2d *Contracts* § 317 (1964); 17A C.J.S. *Contracts* § 373 (1963).

Applying these principles in this case, we conclude that the plaintiffs had acquired rights as third party beneficiaries under the joint venture contract and assignment

of the Bridgman-Curry contract before the defendant assignees Stevens, Fike and Greene quitclaimed their interests back to Currys in their belated attempt to avoid further obligations to plaintiffs. Before those assignee defendants in late April of 1984 attempted reconveyance to Currys, the plaintiffs had manifested assent to the joint venturers' contract and acted to some extent in reliance on it. In 1983 they had accepted from the joint venturers a check drawn on their bank account—entitled "Curry-Stevens-Fike-Greene-Bibo"—in payment of the principal and interest due that year. Before the attempted reconveyances, the plaintiffs also demonstrated justifiable reliance on the joint venturers' promises to pay by granting Currys an extension of time to make the payments due in March of 1984, agreeing to the extension when Curry said, "We'll get you the money." Whether or not that reliance alone would have been sufficient to terminate the defendant assignees' power to modify their duties to plaintiffs, the plaintiffs acquired rights in the joint venture contract by their manifestation of assent to the joint venture agreement. We recognize, as does the Restatement, that manifestation of assent should be sufficient without a separate showing of change of position or reliance because the third party beneficiary, here the plaintiffs, may "rely in ways difficult or impossible to prove." Restatement (Second) of Contracts § 311 comment h (1981).

It is noteworthy that the three assignee defendants who attempted to quitclaim their interests in the farm back to Currys apparently did not comply with the provisions of the joint venture contract requiring that they give the remaining joint venturer Bibo an opportunity to purchase their interest. We have found, however, that their attempt to avoid liability was unsuccessful because plaintiffs had already acquired rights as third party beneficiaries. Consequently, that failure to comply with the terms of the joint venture contract is not controlling in our disposition of this issue.

We conclude that the Stevens, Fike, and Greene reconveyances to Currys did not affect their obligations to perform the Bridgman-Curry contract in accordance with the terms of the joint venture agreement and acceptance of assignment.

IV. *Balancing of Equities.*

In concluding its decision dismissing the plaintiffs' foreclosure action, the trial court wrote:

> All of the parties to this lawsuit have been hurt financially. Since their contracts were entered into, they have been hurt by national and international economic developments totally beyond their control. The defendants lost their down payment and contract payments. Plaintiffs have lost their hope of striking it rich. But of all the parties, it is the plaintiffs who are left with the most— their farm, and worth in 1985 far more than they undoubtedly paid for it in 1965, as well as the payments made to them under the contract before defendants went into default.

Reviewing the record de novo, we reach a contrary conclusion in balancing the equities. Neither the plaintiffs nor the assignee defendants have shown that the equities preponderate in their favor. The plaintiffs seek only foreclosure of the contract and a judgment for the amount the Currys, and thereafter the assignee defendants as joint venturers, agreed to pay for the farm. On the other side of the ledger of equities, the assignee defendants have not satisfactorily shown what the plaintiffs initially paid for the farm, nor what improvements they made, nor what is its present market value.

█ The plaintiffs do not yet have clear title to the farm; title and possession are subject to a receivership, judicial sale, and various parties' statutory redemption rights. The quitclaim deed Currys tendered to plaintiffs at the close of trial has not transferred title back to the plaintiffs because they have not accepted it. *See County of Worth v. Jorgenson,* 253 N.W.2d 575, 578 (Iowa 1977) ("grantor cannot unilaterally force title upon a grantee"; acceptance consists of grantee's conduct and intent to accept).

Plaintiffs persuasively argue that they seek only the benefit of their bargain with Currys, extended to the defendant assignees by the joint venture agreement which spread the Currys' risk and potential profits among four additional persons. Each of the assignee defendants had in writing the terms of the joint venture agreement and the real estate contract each became obligated to perform. (Copies of the Bridgman-Curry contract were attached to the joint venture contract and to the executed acceptance of the assigned interests.) The assignee defendants must have known and understood there were risks involved in the venture. They expected to build a large equity in the farm with a minimal investment, hoping the Currys' management would generate farm income that would service the debt, make further capital outlays unnecessary, and eventually yield an unencumbered undivided one-sixth interest in the valuable farm. Each assignee defendant voluntarily assumed risks and obligations in pursuit of a profitable venture. Unfortunately for them the venture apparently will not be profitable, at least in the short term, but they have not shown it is inequitable to allow the plaintiffs to foreclose their contract and obtain a deficiency judgment for amounts they agreed to pay.

■ The prayer of plaintiffs' amended foreclosure petition asked that a joint and several in personam deficiency judgment be entered against Currys as well as the assignee defendants. Currys are not liable for such a judgment because the plaintiffs in the reorganization proceeding waived all claims for a deficiency judgment against Currys. The assignee defendants as joint venturers, however, are jointly and severally liable for the amounts due under the Bridgman-Curry contract. The assignee defendants have not contended that their obligations to plaintiffs, if any, should be deemed several but not joint. Moreover, the law governing operations of joint ventures is that generally applicable to partnerships. *Jensen v. Schreck*, 275 N.W.2d 374, 378 (Iowa 1979). Individual joint venturers, like individual partners, would thereby be jointly liable to pay obligations of the joint venture. *See Hanson v. Birmingham*, 92 F.Supp. 33, 42 (N.D.Iowa 1950); 5 E. Hayes, *Iowa Practice—Business Organization* §§ 32, 33, 64, 85 (2d ed. 1985); 1 G. Hornstein, *Corporation Law and Practice* § 3 (1959). Of course all of the assignee defendants will have joint and several rights of redemption as debtors in accordance with Iowa Code chapter 628 (1985).

## V. *Disposition.*

■ Plaintiffs are entitled to a decree of foreclosure. The final decree shall be entered by the trial court after all parties and their counsel are given an opportunity to present their respective views on specific provisions it should contain. The decree should conform with this opinion and also reflect current balances owing on the contract, with interest and costs to the date of the decree that will be entered and such attorney fees as the trial court finds plaintiffs entitled to receive in accordance with the terms of the real estate contract and Iowa law governing foreclosure. The decree shall minimally incorporate the following features:

(1) Plaintiffs shall receive a deficiency judgment against the assignee defendants in the amount of the unpaid principal and interest owing on the Bridgman-Curry real estate contract, unpaid real estate taxes, plaintiffs' attorney fees to be determined by the trial court, and taxable court costs.

(2) Plaintiffs shall have a decree of foreclosure in rem against the real estate described in the Bridgman-Curry contract and all defendants; the plaintiffs' lien shall be established as a first and paramount lien against the real estate, with priority of junior liens listed as appropriate.

(3) Provision shall be made for special execution to issue forthwith against the real estate to collect the judgment, interest, attorney fees, costs, and costs to accrue, and statutory rights of redemption of the several defendants shall be explicitly identified and preserved.

(4) Provision shall be made for continuing, modifying, or terminating the authority of the receiver who initially took possession of the real estate by order of the district court entered on March 22, 1985.

REVERSED AND REMANDED WITH DIRECTIONS.